STATE of Minnesota, petitioner,
Appellant,

v.

Jeffrey Lyle ROBB, Respondent.

No. C1–98–1872.

Supreme Court of Minnesota.

Jan. 20, 2000.

Marcy S. Crain, Assistant County Attorney, Anoka, for appellant.

Leslie Joan Rosenberg, Minneapolis, for respondent.

## OPINION

RUSSELL A. ANDERSON, Justice.

In this case we review the pretrial order of the district court suppressing, on Fourth Amendment grounds, a shotgun and ammunition seized during a search of respondent Jeffrey Lyle Robb's vehicle. We conclude, as did the court of appeals, that the state has failed to demonstrate, clearly and unequivocally, that the order was in error and we affirm.

A shotgun and ammunition were seized during a search of Robb's vehicle in Anoka County. At 9 o'clock on a July evening in 1998, two Anoka County deputies on routine patrol at the Linwood Lake landing noticed a boat trailer with expired license tabs that did not belong to the trailer. The deputies were inspecting the trailer when a friend of Robb's drove up in

Robb's Ford Bronco. Robb's friend told the deputies that the trailer belonged to Robb, who was in a boat on Linwood Lake. The deputies ran license plate checks and learned that the Bronco was registered to Robb, that it had no violations, and that the boat trailer was not registered to either Robb or his friend. The deputies also learned that there was a "body only" warrant for Robb's arrest because he had failed to appear in court on a minor traffic offense.

Robb's friend walked with the deputies to the lakeshore and called Robb to come to shore. Robb came willingly, landing his boat at the water's edge. Once on shore, Robb gave the deputies his name and one of the deputies asked Robb for identification. Robb indicated that his license was in the Bronco and, accompanied by one of the deputies, Robb walked to the Bronco, opened the door, reached his arm into the vehicle and retrieved his license from the dashboard.[1] The deputy then took Robb to the front of the Bronco to discuss the expired license tabs on the trailer. After the other deputy confirmed that there was a warrant for Robb's arrest, the deputies informed Robb that he would be arrested. Robb remained cooperative and told the deputies that he was aware of the warrant but that he thought he had time to take care of the matter.

The deputies then initiated a conversation about how to deal with removing the boat, trailer and Bronco from the landing. Because Robb had been cooperative, one of the deputies suggested that Robb load the boat onto the trailer and then Robb's friend could drive the vehicles away, thereby avoiding expensive towing charges. Robb stated that he would be happy to load the boat for his friend. At that point, one of the deputies told Robb that "for [deputy] safety" they would have to search

the Bronco and the boat before Robb could enter them.

According to the deputies, Robb became "very nervous," "fidgety" and "antsy" when told of the search. Robb told the deputies that he did not want them in his vehicle. One of the deputies stepped between Robb and the Bronco and the other deputy then ordered that the Bronco be searched. While searching the Bronco, the deputy moved some clothing between the front seats and found a loaded shotgun. Robb was then handcuffed, as was his friend. The deputies seized the loaded shotgun and released Robb's friend, later providing her with a telephone so that she could call for help to remove the Bronco, boat and trailer. The deputies left with Robb, leaving Robb's friend to remove the vehicles from the landing.

A subsequent background check revealed that Robb was convicted of assault in the second degree in 1992. Robb was charged with Possession of a Firearm by an Ineligible Person (Convicted Felon) in violation of Minn.Stat. §§ 624.713, subd.1(b) & 2; 609.11, subd. 5(b); and 609.101, subd. 4 (1998).

## I.

██ We will not overturn a pretrial order of the district court unless "the state demonstrates clearly and unequivocally that the trial court erred in its judgment and that, unless reversed, the error will have a critical impact on the outcome of the trial." *State v. Webber*, 262 N.W.2d 157, 159 (Minn.1977). There is no dispute that the district court's pretrial order will have a critical impact on the outcome of trial. Therefore, the state must demonstrate clearly and unequivocally that the district court erred when it suppressed the shotgun and ammunition. The district court's order is based upon an interpretation of law which we review de novo. *See*

---

[1]. While both the district court and the court of appeals refer to Robb retrieving his driver's license through the window, we find no such evidence. Both deputies testified that Robb opened the door, although there was some disagreement over whether it was the passenger or driver's side door.

*State v. Othoudt,* 482 N.W.2d 218, 221 (Minn.1992).

The starting point in the analysis of a challenged search is to note that subject to certain narrow exemptions, warrantless searches are prohibited under the United States Constitution. *See New York v. Belton,* 453 U.S. 454, 457, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981). Exemptions from this general rule are based on particular exigencies of a situation and must be "jealously and carefully drawn" and "the burden is on those seeking the exemption to show the need for it." *Coolidge v. New Hampshire,* 403 U.S. 443, 455, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971).

One exemption from the warrant requirement is that a person's body and the area within his or her immediate control may be searched incident to a lawful arrest. *See Chimel v. California,* 395 U.S. 752, 763, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). This exemption ensures officer safety by allowing officers to remove any weapons the arrestee might reach and also prevents the arrestee from tampering with or destroying evidence or contraband. *See id.* Because of the difficulty lower courts had applying *Chimel*'s immediate control test to vehicle searches, the Supreme Court established a "bright line" rule for those searches in *Belton.* 453 U.S. at 459–60, 101 S.Ct. 2860, 69 L.Ed.2d 768. *Belton* held that when the occupant of a vehicle is lawfully arrested the police can automatically search the vehicle's passenger compartment. 453 U.S. at 460, 101 S.Ct. 2860, 69 L.Ed.2d 768.

A second exemption from the warrant requirement permits a search of a vehicle's passenger compartment, even when not incident to arrest, if an officer possesses a reasonable belief based on specific and articulable facts that a suspect is dangerous and may gain immediate control of weapons. *See Michigan v. Long,* 463 U.S. 1032, 1049, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983). A third exemption, referred to as the doctrine of inevitable discovery, permits evidence seized in violation of the Fourth Amendment to be admitted at trial if the state can demonstrate that, even if the improper police conduct had not occurred, the evidence eventually would have been discovered. *See Nix v. Williams,* 467 U.S. 431, 444, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984).

We analyze the validity of the deputies' decision to search the Bronco based on the totality of the circumstances at two critical points in time. The first point in time is when the deputies made the initial decision to search the Bronco, but before they informed Robb of the search. We must determine whether this was a valid search incident to arrest; that is, whether Robb was an occupant of the Bronco under *Belton* and whether the passenger compartment of the Bronco was within Robb's immediate control under *Chimel.*

If we conclude that this was not a valid search incident to arrest under either *Belton* or *Chimel,* we must then turn our analysis to the second critical point in time, which was after the deputies told Robb that the Bronco would be searched. Here we must determine whether Robb's nervous conduct and opposition to the search constitute sufficient justification for the search under the reasonable, articulable suspicion standard set out in *Long.* If the requirements of *Long* are not met, we must then decide whether the deputies could have impounded and inventoried the Bronco, *see South Dakota v. Opperman,* 428 U.S. 364, 376, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976), which could render the evidence admissible under the doctrine of inevitable discovery. *See Nix,* 467 U.S. at 444, 104 S.Ct. 2501, 81 L.Ed.2d 377.

First we focus on that point in time when the deputies made the initial decision to search the Bronco, but before they informed Robb of the search. If Robb was an occupant of the Bronco under *Belton,* the search was valid. If Robb was not an occupant under *Belton,* there may still be a valid search incident to arrest under the

immediate control test articulated in *Chimel*.[2]

■ We conclude that Robb was not an occupant within the meaning and purpose of *Belton* and therefore the search was not valid under *Belton*. In *Belton*, the Supreme Court held that when the occupant of an automobile is subjected to a lawful custodial arrest, a search of the passenger compartment of the automobile in which he or she was riding is constitutionally permissible. 453 U.S. at 463–64, 101 S.Ct. 2860, 69 L.Ed.2d 768.

■ While the Court did not define the term "occupant" in *Belton, Belton*'s rationale does not apply where, as here, the arrestee, when approached by the arresting officer, was so far removed from the vehicle, both in distance and in time, that he did not have the opportunity to conceal weapons, contraband, or evidence therein. To apply *Belton* in such a circumstance would sever *Belton* from its foundation in *Chimel:* that at the time the person was arrested, the area to be searched was under his or her immediate control. *See Lewis v. United States*, 632 A.2d 383, 388 (D.C.1993); *United States v. Vaughan*, 718 F.2d 332, 333–34 (9th Cir.1983). The mere presence of the vehicle in the vicinity of the arrest is insufficient to support a search. *Belton* does not permit searches of arrestees' vehicles; it permits searches of occupants' vehicles incident to lawful arrest.

■ The state asks this court to extend *Belton* to a situation where the arrestee was not an occupant of the vehicle at the time the officers approached him. In fact, Robb was not even near the Bronco when the deputies first approached him to arrest him; he was in a boat on the lake. The state argues that, because Robb was about to become an occupant of the car, *Belton* applies. However, the deputies controlled whether Robb would occupy the Bronco and, as discussed below, an officer may not encourage occupancy so as to justify a search under *Belton*.[3]

The state refers us to *United States v. Sholola*, 124 F.3d 803 (7th Cir.1997), in which, although the arrestee also had not yet entered his vehicle, the court upheld a search because the vehicle was "positively linked" to the arrestee prior to his arrest. *See id.* at 817. This reasoning places few constraints on warrantless vehicle searches. We find *Sholola* neither persuasive nor compelling. To say a vehicle is "positively linked" does not establish that the arrestee had an opportunity to access weapons or to conceal or destroy contraband, the foundation of the holdings in both *Belton* and *Chimel*.

We conclude that *Belton* does not apply when the arrestee is first approached while too far away from the vehicle, both in distance and in time, to have an opportunity to conceal a weapon, contraband or evidence therein. Therefore, we hold that Robb was not an "occupant" and the search is not permissible under *Belton*.

2.  Robb argues that this search cannot be considered "incident to a lawful arrest" because he was not arrested until after the deputies searched the Bronco. However, "a search * * * will qualify as incident to a subsequent arrest if the probable cause for the arrest existed prior to the search." *State v. White*, 489 N.W.2d 792, 794 n. 1 (Minn.1992). Because the deputies had an arrest warrant for Robb, and therefore had no discretion regarding whether to arrest him, the search is not rendered invalid because the arrest had not yet been effectuated.

3.  The state argues that Robb's act of reaching his arm into the Bronco also qualifies him as

an occupant under *Belton*. The act of reaching an arm into the interior of a vehicle while under police supervision does not make one an occupant for the purposes of *Belton*. *See State v. Foster*, 127 Idaho 723, 905 P.2d 1032, 1039 (Idaho Ct.App.1995) (retrieving identification from vehicle did not render arrestee an occupant for the purposes of *Belton*); *cf. United States v. Riedesel*, 987 F.2d 1383, 1389 (8th Cir.1993) (holding that "[o]nce [the arrestee] had *fully entered* the interior of his car in the course of his arrest, the passenger compartment became the area within his control as defined in *Belton* ") (emphasis added).

To hold that *Belton* is not applicable because Robb was not an occupant of the Bronco does not end the inquiry. While *Belton*'s purpose was to create a bright line rule for when the passenger compartment of an occupant's vehicle can be searched, it was not intended to prohibit all warrantless vehicle searches unless the arrestee was an occupant. Rather, absent a warrant, the *Chimel* "immediate control" test applies to searches of nonoccupant arrestees' vehicles. *See, e.g., United States v. Adams*, 26 F.3d 702, 705 (7th Cir.1994); *United States v. Hudgins*, 52 F.3d 115, 119 (6th Cir.1995). However, the state did not argue *Chimel* to the district court, but raised it for the first time on appeal. Because the state failed to show that Robb had immediate control over the passenger compartment at the district court, the state failed to carry its burden of proof.

Our concern and the concern of society generally for officer safety cannot be over-stated. Because of this concern, we are hesitant to craft a rule of law that provides an incentive to officers to take unnecessary risks, such as leaving an arrestee unrestrained, or standing next to an unsecured vehicle, in an effort to place an area within the arrestee's immediate control, and thereby gain the authority to search. Where an officer has control over the arrestee, courts should view the use of *Chimel* to justify a search in these circumstances with some skepticism. *Cf. United States v. Griffith*, 537 F.2d 900, 904 (7th Cir.1976) (noting that "the danger that [the arrestee] would walk within reach of [a weapon or evidence] * * * was of the officers' own making"); *United States v. Erwin*, 507 F.2d 937, 939 (5th Cir.1975) (holding police cannot "allow the arrestee freedom of movement, and then later use that freedom to justify an exploratory search").

So while the state has not established facts showing Robb to be in immediate control of the passenger compartment, we also hold that *Chimel* is inapplicable when the arrestee's proximity to the vehicle is fully controlled by the arresting officers, as in this case, and not necessary to the safe and orderly processing of the arrest. As soon as Robb landed the boat, he was cooperative and under the control of the deputies arresting him. A deputy accompanied Robb to the Bronco to retrieve his identification and then led him to the front of the vehicle to discuss the license tab. Under these facts, allowing Robb's access to the vehicle as a courtesy to move it cannot be used to justify a search of it. *Cf. Bandelier v. State*, 175 Ind.App. 571, 372 N.E.2d 1235, 1237 (Ind.Ct.App.1978) (applying *Chimel* when arrestee disobeyed officer's order to return to the squad car, went to his vehicle and reached through an open window, bringing area within his immediate control).

The deputies were trying to accommodate Robb and their request to search the vehicle before allowing him to enter it was perfectly legitimate. However, when Robb did not consent to the search, the officers were not authorized to search it absent some other exigency. *See United States v. Anthon*, 648 F.2d 669, 675–76 (10th Cir.1981); *cf. State v. Griffin*, 336 N.W.2d 519, 524 (Minn.1983) (holding evidence seized in plain view when officer accompanied arrestee to get shoes admissible because arrestee could not go barefoot in the snow).[4]

Our concern for officer safety leads us to conclude that the better rule encourages officers to follow normal police protocol and to *not* allow vehicles, and the weapons or evidence they may contain, to

4. The state argues that, even if the deputies had not allowed Robb to enter the Bronco, the search would have been justified because they would have had to search it before they could allow Robb's friend to enter it. We see no basis on which to hold that an officer can search any vehicle before letting a third party enter the vehicle. Robb's friend had been cooperative with police, and they had no basis on which to believe she would be dangerous.

come within the arrestee's immediate control during the arrest. Therefore, absent exigent circumstances, a warrantless search beyond the area of immediate control of an arrestee who is not the occupant of a vehicle requires the arrestee's consent. *See Anthon*, 648 F.2d at 675–76. By the state's admission, allowing Robb back into the Bronco to load the boat was a courtesy, not an exigency. They did not have to let him enter the vehicle to effectuate the arrest. There were alternatives for dealing with the boat that the deputies eventually pursued. Once Robb told the deputies that he did not want them in his vehicle, they had the option of withdrawing their offer to allow him to get the boat out of the water. Because Robb was under the deputies' control, his access to the vehicle cannot be used to justify a search of it.

■ We hold that the search of the vehicle was not a valid search incident to arrest. The state argues that Robb's nervous conduct upon being informed that the deputies intended to search the Bronco gave the deputies the level of suspicion required by *Long* to justify a protective search of the passenger compartment of the Bronco. Such a search is permissible where "specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant" the officer's belief that the suspect is dangerous and may gain immediate control of weapons. *Long*, 463 U.S. at 1049, 103 S.Ct. 3469, 77 L.Ed.2d 1201.

The state points to several facts that it claims support a reasonable inference that Robb was dangerous and could gain control of a weapon: 1) the deputies had a warrant for Robb's arrest; 2) it was approximately 9 p.m. and it was getting dark; 3) the boat landing was deserted; 4) Robb's demeanor changed when informed of the search and 5) the presence of Robb's friend.

■ These facts do not support the inference of dangerousness. The arrest warrant sheds little light on the likelihood that Robb had a weapon. Failure to appear in court for a minor driving offense does not support an inference of dangerousness. *Cf. State v. Gilchrist*, 299 N.W.2d 913, 917 (Minn.1980) (noting a "close case" but upholding search where defendant was known to carry firearms and was connected with both a homicide in which a firearm was used and another shooting). We also do not see how the time of day makes it more or less likely that an arrestee is armed and, furthermore, there was no testimony from either deputy regarding the lighting conditions at the landing. Because the state offers no evidence that Robb's friend was herself dangerous, the presence of a cooperative third party also does not contribute to an inference of dangerousness. While the deserted nature of the boat landing may make one predisposed to violence more likely to become violent, being in a deserted location, standing alone, cannot support a warrantless search.

■ The state emphasizes that the situation had been under control, that Robb had been so cooperative up until this point that his nervous behavior was an "unknown" and that the deputies had to "give it meaning." The state argues that, under the totality of the circumstances, it was reasonable for the deputies to ascribe to it the meaning that Robb was dangerous and could access a weapon. We do not agree. Robb did not become verbally abusive, violent or uncooperative. He did not move towards the vehicle or attempt to flee. He became nervous and told the deputies he did not want them in his vehicle. We do not find that a citizen's nervousness about having his or her property searched and voicing the desire not to have the property searched supports an inference that he or she is dangerous and can access a weapon. An arrestee's nervousness and refusal to consent to an officer's suggested course of action that would require the invasion of protected privacy interests, standing alone, do not justify a protective search under *Long*.

■ Finally, the state argues that the deputies' instincts to search were correct. While we do value and respect a police officer's intuition, those instincts, even if proven correct, are insufficient to justify a protective search. *See Terry v. Ohio*, 392 U.S. 1, 27, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). The officers' instincts in this situation should have led them to complete the arrest procedures and ensure that Robb would not have access to the vehicle.

■ We turn finally to the state's fall-back argument that the Bronco could have been impounded and inventoried and that, as a consequence, the shotgun and ammunition should be admissible under the doctrine of inevitable discovery. *See Nix*, 467 U.S. at 444, 104 S.Ct. 2501, 81 L.Ed.2d 377. Once a vehicle is in police custody, warrantless inventory searches are constitutional. Impoundment and inventory searches are permissible so long as there are standardized criteria that govern their performance. *See Colorado v. Bertine*, 479 U.S. 367, 375, 107 S.Ct. 738, 93 L.Ed.2d 739 (1987). The state did not provide any information regarding standardized criteria applicable in this case. Therefore, the state has not met its burden to demonstrate that the vehicles could have been properly impounded.

■ The state also fails to provide a legal basis under which the Bronco could have been taken into custody. "If impoundment is not necessary, then the concomitant search is unreasonable." *State v. Goodrich*, 256 N.W.2d 506, 510 (Minn. 1977). In the instant case, impoundment could not be described as necessary when, in the end, the vehicles were not impounded. Where a defendant has "arranged for alternative means, not shown to be unreasonable, for the safeguarding of his property," impoundment is unreasonable. *Id.* at 507.

In this case, Robb's friend, a licensed driver, was at the scene and willing to take responsibility for Robb's property. She was able to reach someone to assist her with loading the boat onto the trailer. Even if it had become necessary to have the boat towed, there still would have been no need to impound the Bronco, which was fully operational and which she was perfectly capable of driving. On this record, impoundment cannot be considered reasonable. Therefore, the doctrine of inevitable discovery is inapplicable.

We affirm the district court and court of appeals and conclude that the search of Robb's Bronco violated the Fourth Amendment's prohibition against warrantless searches. We hold that this was not a valid search incident to arrest under either *New York v. Belton* or *Chimel v. California*. We also hold that the facts known to the deputies did not support the reasonable, articulable suspicion necessary to permit a warrantless search under *Michigan v. Long*. Finally, we hold that the evidence is not admissible under the doctrine of inevitable discovery because it was not necessary to impound and inventory the Bronco to safeguard Robb's property or to ensure public safety and the state provided no evidence of the procedures that govern vehicle impoundment.

Affirmed.