**STATE of Minnesota, Respondent,**

v.

**Michael Jon OLSON, Appellant.**

**No. C0–01–191.**

Court of Appeals of Minnesota.

Oct. 2, 2001.

Mike Hatch, Attorney General, Robert A. Stanich, Assistant Attorney General, St. Paul, MN; and Alan L. Mitchell, St. Louis County Attorney, Duluth, MN, (for respondent).

Samuel A. McCloud, Kelly Vince Griffitts, Carson J. Heefner, Shakopee, MN, (for appellant).

Considered and decided by
PETERSON, Presiding Judge,
AMUNDSON, Judge, and ANDERSON,
Judge.

## OPINION

G. BARRY ANDERSON, Judge.

Appellant Michael Olson, arrested for outstanding warrants during a routine traffic stop, resisted arrest and now challenges the district court's admission into evidence of the methamphetamine found on his person during the police search that followed his resistance. Appellant argues that his initial arrest was unconstitutional and that his subsequent resistance to that arrest did not constitute an intervening circumstance sufficient to purge the taint of the initial illegality. But we also conclude that the arresting officer did not have probable cause to arrest appellant initially. We further conclude, however, that appellant's subsequent act of resisting the unlawful arrest constituted a new crime sufficient to purge the taint of the initial illegality, and that the subsequent search of appellant's person, which produced the methamphetamine, was a constitutional search incident to arrest. We therefore affirm.

## FACTS

On March 16, 2000, at approximately 4:15 p.m., St. Louis County Deputy Sheriff Charles Williams observed a vehicle traveling southbound on Highway 100 at a high rate of speed. Williams obtained a radar reading of 65 in a 55 miles-per-hour zone, activated his squad car's emergency lights, and executed a traffic stop. Williams approached the car and immediately recognized the driver and front-seat passenger as "very active drug user[s]." Williams did not, however, recognize the man and child in the back seat.

Williams asked the driver for his license and for the name of the man in the back seat to ensure that there were no outstanding warrants for the occupants of the vehicle. The driver told Williams that the adult back-seat passenger was named Michael Olson, appellant here. Williams returned to his squad car and determined that there were two outstanding warrants for persons named Michael Olson; one for Michael (no middle name) Olson (d.o.b.3/21/71) and another for Michael Joseph Olson (d.o.b.5/5/63).

Williams returned to the stopped vehicle, asked appellant to step out of the car, and told appellant that there were two outstanding warrants for Michael Olson. Appellant explained that he was not the man named in the warrants, but Williams testified that he nevertheless "told [appellant] that at this point [appellant] was under arrest, but if it turned out that there

were no warrants out for him he would be allowed to go." Williams did not ask appellant for his date of birth (11/28/66) or middle name (Jon), and did not ask to see appellant's driver's license.

Williams handcuffed appellant. Although Williams did not believe that appellant had a weapon, he began a pat-down search and appellant objected.* As Williams reached toward appellant's pants pocket, appellant began to twist, turn, and pull away from the deputy. Williams applied pressure to control appellant, but when he released some pressure, appellant struggled more violently. Williams escorted appellant to his squad car.

Because appellant continued to struggle and thwart the officer's efforts to place him in the squad car, Williams called for backup. When another officer arrived, Williams "completed the pat-down search of [appellant]" and "[in appellant's] pants pocket, [Williams] retrieved a small knife and a small baggie of" what tests later proved to be methamphetamine. Williams testified that, at the time of the search, appellant was under arrest for obstructing legal process.

Williams and the other officer placed appellant in the rear seat of Williams's squad car. The officers searched the stopped vehicle, did not find any controlled substances, and ultimately permitted the driver, the front-seat passenger, and the child to leave. The officers transported appellant to jail, and police conducted another search as part of the booking process.

The state charged appellant with fifth-degree controlled-substance possession, a violation of Minn.Stat. § 152.025, subd. 2(1) (2000), and obstruction of legal process, a violation of Minn.Stat. § 609.50, subd. 1(2) (2000). The state later dismissed the obstruction charge. Appellant moved to suppress the methamphetamine recovered from his person and moved to dismiss the controlled-substance possession charge for lack of probable cause. The district court denied the motion. The parties submitted the case on stipulated facts, and the district court found appellant guilty of fifth-degree controlled-substance possession. The district court sentenced appellant, ordering a stayed term of one year and one day, subject to probation conditions. Appellant contests the denial of his motion to suppress the methamphetamine, arguing that the evidence was the product of an unconstitutional search.

## ISSUE

Did the district court err by denying appellant's motion to suppress the methamphetamine recovered by police following a traffic stop and subsequent arrest for obstruction of legal process?

## ANALYSIS

Appellant argues that the district court erred by failing to suppress the methamphetamine because (1) the possibility that there were outstanding warrants for appellant's arrest did not afford Williams probable cause to arrest appellant and (2) appellant's act of resisting arrest, thereby obstructing legal process, did not remove the primary taint of the initial illegal arrest. Respondent state counters that, even if Williams lacked probable cause to arrest appellant for possible outstanding arrest warrants, Williams lawfully arrested appellant for obstruction of legal process, thereby removing the taint of the initial illegal arrest. Respondent contends that the subsequent search that produced the methamphetamine was a constitutional search incident to arrest.

[W]hen reviewing a pre-trial order suppressing evidence where the facts are not in dispute and the [district] court's

decision is a question of law, the reviewing court may independently review the facts and determine, as a matter of law, whether the evidence need be suppressed.

*State v. Othoudt,* 482 N.W.2d 218, 221 (Minn.1992) (citations omitted). Whether an arrest is supported by probable cause, and whether a search is constitutional, are questions of law, which this court reviews de novo. *See State v. Horner,* 617 N.W.2d 789, 795 (Minn.2000) (probable cause); *State v. Robb,* 605 N.W.2d 96, 99 (Minn. 2000) (search).

## I.

■■■ The United States and Minnesota constitutions protect citizens from "unreasonable searches and seizures." U.S. Const.Amend IV; Minn. Const. Art. 1, § 10. Warrantless searches and seizures are unreasonable, subject to only a few exceptions. *Katz v. United States,* 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967); *Robb,* 605 N.W.2d at 100. One of these exceptions is a search incident to arrest:

> If an arrest is valid, police may conduct, without a warrant, a full search of the person of the arrestee as an incident of the arrest without any additional justification.

*State v. Walker,* 584 N.W.2d 763, 766 (Minn.1998) (citations omitted).

### A. Initial Arrest for Outstanding Warrant

■■■ Appellant first contends that Williams's search of his person was not a lawful search incident to arrest because the possibility of outstanding warrants did not supply the probable cause necessary for Williams to lawfully arrest appellant.

■■■ A valid arrest requires probable cause. *State v. Beckman,* 354 N.W.2d 432, 436 (Minn.1984). Probable cause exists if the objective facts indicate that "a person of ordinary care and prudence [would] entertain an honest and strong suspicion that a crime has been committed." *State v. Johnson,* 314 N.W.2d 229, 230 (Minn.1982) (citing *State v. Carlson,* 267 N.W.2d 170, 173 (Minn.1978)). The facts must justify more than mere suspicion but less than a conviction. *Carlson,* 267 N.W.2d at 173–74; *see also State v. Riley,* 568 N.W.2d 518, 523 (Minn.1997) (police must show that they could have reasonably believed that a crime had been committed by the person to be arrested). The probable-cause standard is an objective one that considers the totality of the circumstances. *State v. Perkins,* 582 N.W.2d 876, 878 (Minn.1998).

Minn.Stat. § 629.32 (2000) provides that a peace officer may lawfully arrest a person "when advised by any other peace officer in the state that a warrant has been issued for that person." Williams, however, did not have the necessary "strong suspicion" to arrest appellant because Williams did not know whether appellant was the same man named in the warrants.

Williams testified, "I told [appellant] at that time he was going to have to come with me until I could make sure that the Mike Olson and the Michael Joseph Olson [in the warrants] were not him. * * * I told him at this point he was under arrest, but if it turned out that there were no warrants out for him, he would be allowed to go." Williams also testified that he knew the driver and front-seat passenger to be "very active drug user[s]." Williams did not ask appellant for his date of birth or middle name until *after* arresting appellant, and he never asked appellant for his driver's license.

Considering the totality of the circumstances, we conclude that Williams had only a "mere suspicion" that appellant was the man named in the warrants because

Williams only knew that appellant associated with alleged known drug users. As discussed above, a "mere suspicion," as opposed to a "strong suspicion," does not rise to the level of probable cause. Outstanding warrants for persons named Michael Olson, without more, did not supply Williams with the probable cause necessary to arrest appellant.

We reject respondent's contention that appellant was not under arrest at the time he was handcuffed. An individual is "in custody" to the degree associated with formal arrest when an objectively reasonable person in the place of the detainee would believe that he or she was in custody. *Berkemer v. McCarty*, 468 U.S. 420, 442, 104 S.Ct. 3138, 3151, 82 L.Ed.2d 317 (1984). Courts must examine all of the surrounding circumstances to determine whether there is a formal arrest. *State v. Rosse*, 478 N.W.2d 482, 484 (Minn. 1991).

Williams told appellant that he was "under arrest," handcuffed him, and began a pat-down search in anticipation of placing appellant in his squad car. We conclude that a reasonable person in appellant's circumstances would have believed that he was formally under arrest. *See, e.g., United States v. Griffin*, 922 F.2d 1343, 1349 (8th Cir.1990) (discussing factors indicating custody, including being told under arrest); *State v. Moorman*, 505 N.W.2d 593, 599 (Minn.1993) (person under arrest when handcuffed).

### B. Removal of Taint

Appellant does not dispute that his act of twisting and turning supplied Williams with the probable cause necessary to arrest him for obstruction of legal process. Appellant contends, however, that his act of obstructing legal process, and his consequent arrest for that crime, did not remove the primary taint of the initial illegal arrest for the outstanding warrants, and, therefore, the district court should have suppressed all derivative evidence.

It is established that evidence discovered by exploiting previous illegal conduct is inadmissible. *Wong Sun v. United States*, 371 U.S. 471, 488, 83 S.Ct. 407, 417, 9 L.Ed.2d 441 (1963). Such evidence is considered "fruit of the poisonous tree," and, to be admitted, the state must show that the evidence was obtained "by means sufficiently distinguishable to be purged of the primary taint." *Id.* at 488, 83 S.Ct. at 417. Minnesota appellate courts examine several factors to determine whether evidence is fruit of the poisonous tree. *Knapp v. Comm'r of Pub. Safety*, 610 N.W.2d 625, 628 (Minn.2000). The factors considered are (1) the purpose and flagrancy of the misconduct; (2) the presence of intervening circumstances; (3) whether it is likely that the evidence would have been obtained in the absence of the illegality; and (4) the temporal proximity of the illegality and the evidence alleged to be the fruit of the illegality. *State v. Sickels*, 275 N.W.2d 809, 814 (Minn.1979). No one factor is dispositive; rather, courts must balance all of these factors. *State v. Weekes*, 268 N.W.2d 705, 709 (Minn.1978).

The purpose and flagrancy of Williams's misconduct and the temporal proximity support suppression of the evidence. Williams initially arrested appellant *before* determining whether the outstanding warrants, were, in fact, for his arrest. Williams discovered the methamphetamine within a short time after the initial arrest. A close temporal proximity favors exclusion. *State v. Raj*, 368 N.W.2d 14, 16 (Minn.App.1985), *review denied* (Minn. July 11, 1985).

The intervening circumstances, however, strongly support admission of the evi-

dence. In *State v. Ingram*, this court held that resisting arrest and flight from a police officer during a pat-down search are intervening circumstances sufficient to purge the initial illegality of a prior stop and attempt to search. 570 N.W.2d 173, 179 (Minn.App.1997), *review denied* (Minn. Dec. 22, 1997). The *Ingram* court reasoned that

> Minnesota courts have generally held that resisting arrest and flight from a police officer, even if prompted by illegal police conduct, are intervening circumstances sufficient to purge the illegality of its primary taint. *See City of St. Louis Park v. Berg*, 433 N.W.2d 87, 90 (Minn.1988) (holding that evidence of defendant's resistance to arrest may not be excluded as fruit of the poisonous tree); *State v. Combs*, 394 N.W.2d 567, 568–69 (Minn.App.1986) (holding an illegal arrest does not require suppression of evidence of a crime committed in response to the arrest), *rev'd in part on other grounds, State v. Combs*, 398 N.W.2d 563 (Minn.1987).

*Id.* at 178. *Ingram* explains that a defendant may not resort to "self-help," such as resisting arrest, to resolve disputes concerning unreasonable search and seizures

> because the legal safeguards under the Fourth, Fifth, Sixth, and Fourteenth Amendments provide the victim of an unlawful search with realistic and orderly legal alternatives to physical resistance.

*Id.* (citations and quotations omitted).

 *Ingram* also explains that resisting arrest is different from merely fleeing and attempting to dispose of incriminating evidence; disposing of contraband is a "predictable and common response" to an illegal search that warrants suppression of the evidence. *Id.* (citation omitted). As in *Ingram*, appellant's act of resisting arrest went beyond an ordinary, predictable attempt to dispose of evidence. *See Berg*, 433 N.W.2d at 90–91 (observing that suppression of obstruction evidence would effectively grant defendants a "license to resist, no matter how violently, with impunity"); *cf. State v. Balduc*, 514 N.W.2d 607, 612 (Minn.App.1994) (tossing marijuana plants during execution of search warrant is a predictable response); *Combs*, 394 N.W.2d at 569 (attempt to conceal a cup of beer followed by an assault on an officer was not predictable and warranted admission of the evidence).

Following *Ingram* and the authority relied on by the *Ingram* court, we conclude that the valid arrest of appellant for obstructing legal process outweighs the other factors and removed the taint of the earlier unconstitutional arrest. We therefore hold that the methamphetamine was admissible as the product of a lawful search incident to arrest.[1]

## DECISION

The mere suspicion that appellant was the person name in outstanding warrants, without more, did not supply the probable cause necessary to arrest appellant initially. Appellant's subsequent act of obstructing legal process, however, constituted an intervening circumstance sufficient to purge the taint of the initial illegality. Therefore, the subsequent search of appellant's person, which produced methamphetamine, was a constitutional search incident to arrest.

**Affirmed.**

---

1. Because we conclude that Williams conducted a lawful search incident to arrest, we need not reach respondent's alternative investigatory search arguments.