¶ 38.
ANN WALSH BRADLEY, J.
(dissenting). The majority bucks the nationwide trend when it determines that the Fourth Amendment to the United States Constitution does not require that police follow standardized procedures during a community caretaker impoundment. Adopting the minority rule followed by three federal circuits, it reasons that standardized procedures are unnecessary because police *672 discretion is sufficiently limited by the requirement that impoundments be based on a reasonable community caretaker concern.
f 39. Compounding its misdirection, the majority further errs by expanding an already bloated community caretaker exception to the Fourth Amendment's warrant requirement. It appears that yet again this court's "expansive conception of community care-taking transforms [it] from a narrow exception into a powerful investigatory tool." State v. Matalonis, 2016 WI 7, ¶ 106, 366 Wis. 2d 443, 876 N.W.2d 567 (Prosser, J., dissenting).
¶ 40. Contrary to the majority, I would follow the national trend as illustrated by the well-reasoned approach of the Tenth Circuit in U.S. v. Sanders, 796 F.3d 1241 (2015). It determined that "impoundment of a vehicle located on private property that is neither obstructing traffic nor creating an imminent threat to public safety is constitutional only if justified by both a standardized policy and a reasonable, non-pretextual community-caretaking rationale." Sanders, 796 F.3d at 1248.
f 41. Applying the Sanders test, I conclude that the warrantless impoundment of Asboth's vehicle violated his Fourth Amendment rights. His vehicle neither obstructed traffic nor created an imminent threat to public safety. Additionally, the standardized policies here fail to place any meaningful limits on police discretion and the asserted rationale for the community caretaker impoundment is unreasonable.
f 42. Accordingly, I respectfully dissent.
HH
¶ 43. The Fourth Amendment to the United States Constitution provides that "[t]he right of the *673 people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause. .. Community caretaker im-poundments are an exception to the Fourth Amendment's warrant requirement. State v. Pinkard, 2010 WI 81, ¶ 14, 327 Wis. 2d 346, 785 N.W.2d 592. Given the importance of the privacy interests involved, this exception should be narrowly construed. See Arizona v. Gant, 556 U.S. 332, 345 (2009) (instructing that a motorist's privacy interest in his vehicle is "important and deserving of constitutional protection.").
¶ 44. In Gant, the United States Supreme Court expanded motorists' privacy rights when it narrowed its prior decision in New York v. Belton, 453 U.S. 454 (1981). Belton had previously been read so broadly as to authorize a vehicle search incident to every arrest of any occupant of a vehicle. See Gant, 556 U.S. at 343.
¶ 45. The Gant court explained that "[c]onstruing Belton broadly to allow vehicle searches incident to any arrest would serve no purpose except to provide a police entitlement, and it is anathema to the Fourth Amendment to permit a warrantless search on that basis." Id. at 347. Accordingly, Gant limited searches incident to arrest to two circumstances: either when the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search or when it is reasonable to believe that evidence relevant to the crime of arrest might be found in the vehicle. Id. at 343.
f 46. In order to address the same concerns in the context of vehicle impoundments, the national trend has been to adopt a two-part test that resembles Gant's narrowing of Belton. This test, like the test adopted in Gant, prioritizes motorists' privacy rights over deference to police discretion. It limits police *674 discretion regarding impoundments by requiring both a standardized policy governing impoundment and a "reasonable, non-pretextual community-caretaking rationale." Sanders, 796 F.3d at 1248.
¶ 47. The question of whether a community caretaker impoundment of a vehicle must be governed by a standardized policy is an issue of first impression in Wisconsin. However, the United States Supreme Court has instructed that the exercise of police discretion must be "exercised according to standard criteria and on the basis of something other than suspicion of evidence of criminal activity." Colorado v. Bertine, 479 U.S. 367, 375 (1987).
f 48. A majority of federal and state appellate courts that have addressed this issue have concluded that a warrantless community caretaker impoundment is constitutional only if there exists standardized criteria limiting police discretion. See, e.g., United States v. Sanders, 796 F.3d 1241, 1248 (10th Cir. 2015); United States v. Proctor, 489 F.3d 1348, 1353-54 (D.C. Cir. 2007); Miranda v. City of Cornelius, 429 F.3d 858, 866 (9th Cir. 2005); United State v. Petty, 367 F.3d 1009, 2012 (8th Cir. 2004); United States v. Duguay, 93 F.3d 346, 351 (7th Cir. 1996); Patty v. State, 768 So. 2d 1126, 1127 (Fla. Dist. Ct. App. 2000); State v. Weaver, 900 P.2d 196, 199 (Idaho 1995); People v. Ferris, 9 N.E.3d 1126, 1137 (Ill. Ct. App. 2014); Fair v. State, 627 N.E.2d 427, 433 (Ind. 1993); State v. Huisman, 544 N.W.2d 433, 437 (Iowa 1996); Com. v. Oliveira, 47 N.E.3d 395, 398 (Mass. 2016); State v. Robb, 605 N.W.2d 96, 104 (Minn. 2000); State v. Milliorn, 794 S.W.2d 181, 186 (Mo. 1990); State v. Filkin, 494 N.W.2d 544, 549 (Neb. 1993); People v. O'Connell, 188 A.D.2d 902, 903 (N.Y. App. Div. 1992); State v. O'Neill, 29 N.E.3d 365, 374 (Ohio Ct. App. 2015); McGaughey v. State, 37 P.3d 130, 142-43 (Okla. Crim. App. 2001).
*675 ¶ 49. Yet, the majority follows the minority view of three federal circuits, determining that in cases involving warrantless community caretaker impound-ments that standardized policies are not necessary. United States v. McKinnon, 681 F.3d 203, 208 (5th Cir. 2012); United States v. Smith, 522 F.3d 305, 312 (3d Cir. 2008); United States v. Coccia, 446 F.3d 233, 238 (1st Cir. 2006). It reasons that standardized procedures are unnecessary because police discretion is sufficiently limited by the requirement that impoundments be based on a reasonable community caretaker concern.
¶ 50. According to the majority, "the fundamental question is the reasonableness of the seizure." Majority op., ¶ 27. It contends that the absence of standard criteria does not "imbue law enforcement officers with 'uncontrolled' discretion to impound vehicles at will as a pretext for conducting investigatory searches." Majority op., ¶ 28. However, as set forth in more detail below, that is exactly what happened here.
¶ 51. The Tenth Circuit's decision in Sanders is illustrative of the national trend. In Sanders, for "reasons not articulated in any policy, [police] impounded a vehicle lawfully parked in a private lot after arresting its driver as she exited a store." Id. at 1242. The police made "no meaningful attempt to allow the driver, her companion, or the owner of the parking lot to make alternative arrangements." Id.
¶ 52. Sanders acknowledged that "[t]he authority of police to seize and remove from the streets vehicles impeding traffic or threatening public safety and convenience is beyond challenge." Id. at 1244 (quoting South Dakota v. Opperman, 428 U.S. 364, 368-69 (1976)). It further explained that Opperman and Bertine establish "two different, but not inconsistent, rules regarding when impoundments are consti *676 tutional." Id. at 1245. Opperman establishes that war-rantless impoundments required by the community caretaking functions of protecting public safety and promoting the efficient movement of traffic are constitutional. Id. Bertine establishes that warrantless im-poundments are unconstitutional if justified by either a "pretext for a criminal investigation or not exercised according to standardized criteria" that limits police discretion. Id.
f 53. After surveying United States Supreme Court and federal circuit precedent, Sanders concluded that "impoundment of a vehicle located on private property that is neither obstructing traffic nor creating an imminent threat to public safety is constitutional only if justified by both a standardized policy and a reasonable, non-pretextual community-caretaking rationale." Id. at 1248.
f 54. Deviating from the nationwide trend, the majority limits motorists' privacy rights. Contrary to the majority, I would follow the national trend protecting motorists' privacy rights under the Fourth Amendment and require both a standardized policy that limits police discretion and a reasonable community caretaker rationale.
A
f 55. Applying the test set forth above, I turn to the question of whether the policies in this case sufficiently limited officer discretion to impound vehicles from private lots.[1]
*677 f 56. The Beaver Dam Police Department policy provides no limitations. In essence, it states that any officer having a vehicle in lawful custody may impound that vehicle:
Any officer having a vehicle in lawful custody may impound said vehicle. The officer will have the option not to impound said vehicle when there is a reasonable alternative; however, the existence of an alternative does not preclude the officer's authority to impound.
¶ 57. Likewise, the Dodge County Sheriffs Department policy governing impoundment provides that deputies are authorized to tow when "the driver . . . has been taken into custody by a deputy, and the vehicle would thereby be left unattended." Additionally, it states that unless otherwise indicated, "the deputy always has the discretion to leave the vehicle at the scene and advise the owner to make proper arrangements for removal."[2]
*678 ¶ 58. Having determined that standardized policies are not constitutionally required, the majority nevertheless considers the policies in the context of whether the seizure was reasonable.
¶ 59. According to the majority, both policies cab-ined the officers' discretion because they limit im-poundment "to situations where officers had custody of, respectively, the vehicle itself or its driver." Majority op., ¶ 34. After concluding that the standardized policies in this case are sufficient, the majority determines that "[t]he fact that the seizure did actually comply with the policies of the acting law enforcement agencies indicates that this impoundment was not an arbitrary decision but a reasonable exercise of discretion." Majority op., ¶ 33.
¶ 60. The majority errs because neither policy limits police discretion. First, it is unclear how the Beaver Dam policy, which allows impoundments whenever officers have custody of a vehicle, provides any limitation at all. How can the police impound a vehicle without having custody of it? The policy's directive is circular.
¶ 61. Second, the majority errs because the Dodge County policy limits police discretion only when a driver is not in custody. The Fourth Amendment's protections against warrantless seizures of property continue to apply after a driver has been arrested. Indeed, the question of whether standardized procedures are required has arisen in such seminal cases as Bertine only after the defendant has been arrested. See, e.g., Bertine, 479 U.S. at 368-369.
*679 ¶ 62. The majority misses the point because the question in this case is whether the policies limit police discretion in determining whether to impound a vehicle after a defendant has been arrested. Both policies give the police unfettered discretion to impound a vehicle when a driver such as Asboth has been arrested.
f 63. The purpose of standardized criteria is to establish why or when a vehicle may be taken into custody, but here neither policy offers any guidance on this question. In State v. Clark, the court of appeals addressed the Milwaukee Police Department towing policy, explaining that when a policy offers no insight into why or when a vehicle may be seized, it is "wholly unhelpful." 2003 WI App 121, ¶ 15, 265 Wis. 2d 557, 666 N.W.2d 112.
¶ 64. Neither policy limits officer discretion "in deciding whether to impound a vehicle, leave it at the scene, or allow the arrestee to have it privately towed." Sanders, 796 F.3d at 1250. In contrast, the policy in Bertine "related to the feasibility and appropriateness of parking and locking a vehicle rather than impounding it." Bertine, 479 U.S. at 378. No such detail governs officer discretion here.
f 65. Accordingly, the policies in this case, as in Sanders, "insufficiently limited officer discretion to impound vehicles from private lots." Sanders, 796 F.3d at 1250.
B
f 66. Having determined that the impoundment was not done in accordance with constitutionally sufficient standardized policies, I could end my analysis here because a community caretaker impoundment is *680 unconstitutional without standardized procures that limit police discretion. The majority, however, concludes that the police reasonably effected a community caretaker impoundment of Asboth's car. Majority op., ¶ 1. Accordingly, I turn now to the question of whether the police conduct in this case was a valid exercise of the community caretaker authority.
f 67. The majority concludes that there are a number of "objective justifications for the impoundment" that establish the police had a bona fide community caretaker purpose. Majority op., f 21. Initially, it contends that if left unattended, Asboth's car would have "inconvenienced a private property owner and customers at the storage facility by impeding the beneficial use of the property." Majority op., f 18. Yet, the hearing testimony demonstrates that it was possible to "drive around" Asboth's vehicle, contradicting this rationale. Beneficial use of the property was not impeded because Asboth's vehicle was not blocking traffic through the storage facility.
¶ 68. Because of the lack of evidence that the vehicle was obstructing traffic at the storage facility, the majority offers a number of additional rationalizations. First, it advances that "any expense for removing the obstruction would have fallen to a private property owner uninvolved in the arrest." Majority op., ¶ 18. Next, it asserts that the police protected the vehicle and its contents from theft and that "Asboth no doubt would have been upset to learn that his personal property was stolen from the car." Majority op., ¶ 19. Finally, it contends that because the registered owner of the vehicle was someone other than Asboth, police were faced with the possibility of needing to make arrangements to return the vehicle to its registered owner. Majority op., f 20.
*681 ¶ 69. The hearing testimony demonstrates that each of these proffered rationales is purely speculative. None of the officers contacted the storage facility to see whether the owner wanted the car removed nor did they contact the registered owner of the vehicle. Additionally, none of the officers recalls speaking with Asboth about whether he could arrange to have someone move the vehicle.
f 70. After dispensing with the majority's speculative justifications for its conclusion that this was a bona fide community caretaker function, I turn now to examine the reasonableness of the warrantless im-poundment. A reasonableness analysis calls for consideration of both "the degree of public interest and the exigency of the situation." State v. Pinkard, 2010 WI 81, ¶ 41, 327 Wis. 2d 346, 785 N.W.2d 592 (quoting In re Kelsey C.R., 2001 WI 54, ¶ 36, 243 Wis. 2d 422, 626 N.W.2d 777).
¶ 71. In its analysis of reasonableness, the majority repeats the same justifications offered as support for its conclusion that the impoundment was a bona fide community caretaker function. Essentially, it contends that the public has a significant interest in impounding a vehicle that would "inconvenience the property's owner and users by impeding beneficial use of the property and creating a potential hazard." Majority op., f 32.
¶ 72. Even if the majority could sufficiently explain how Asboth's vehicle posed a potential hazard to public safety, it errs in stating that it need not consider the exigency of the situation. Id. Acknowledging that this was not an emergent situation, the majority simply omits this consideration from its analysis. Id. Instead, it considers only the public interest, which does not justify the seizure because Asboth's vehicle *682 was parked on private property and there was testimony that there was room to drive around it.
¶ 73. Finally, I turn to the majority's argument that "the lack of realistic alternatives to impoundment further reinforces the reasonableness of the seizure." Majority op., ¶ 35. As set forth above, however, no alternatives to impoundment were considered so there is no evidence as to whether there were realistic alternatives to impoundment. Again, this is pure speculation on the part of the majority.
f 74. Considering the facts of this case, it appears that the impoundment may have been a pretext for an investigatory police motive. See, e.g., Sanders, 796 F.3d at 1245 (explaining that Bertine establishes that impoundment is unconstitutional where police discretion is "exercised as a pretext for criminal investigation.").
¶ 75. Just before the vehicle was impounded, Asboth was arrested on a probation warrant. The car was towed to a city police impound lot, where it was subsequently searched. During the search, police removed and held all items of apparent value, including a pellet gun that was found in the vehicle. The officers conducting the search testified that they considered it to be an inventory search, and conducted it according to their inventory search procedures. However, one officer conducting the search filled out a form indicating that it was done to obtain "evidence," rather than the other possible purposes listed on the form, including "abandoned," "parked in traffic" or "safekeeping."
¶ 76. Contrary to the majority, I conclude that the lack of a compelling public safety need to move Asboth's car suggests that the police were motivated by the investigation of the armed robbery in which he was a suspect. Not only are the rationales offered by *683 the majority hypothetical, but they could be applied to virtually any vehicle, parked anywhere, at any time. In Clark, this court rejected a policy that "might lead to the police towing every unlocked vehicle on the street." 265 Wis. 2d 557, ¶ 16. Likewise, the majority's conclusion may justify the seizure of every vehicle after its driver has been arrested.
¶ 77. Thus, I conclude that the impoundment of Asboth's vehicle was unconstitutional. His vehicle was parked on private property, was not obstructing traffic and posed no imminent threat to public safety. Under such circumstances, in order to survive constitutional scrutiny, the impoundment must be justified by both a standardized policy that limits police discretion and a reasonable, non-pretextual community-caretaking rationale. Here there was neither.
II
¶ 78. Ultimately, I comment on what I and other members of this court have repeatedly warned: a broad application of the community caretaker doctrine "raises the specter that the exception will be misused as a pretext to engage in unconstitutional searches that are executed with the purpose of acquiring evidence of a crime." Pinkard, 327 Wis. 2d 346, ¶ 75.
¶ 79. I have previously voiced the concern that "today's close call will become tomorrow's norm." Id., ¶ 66. Over the years, that is exactly what has happened. In case after case, this exception to the Fourth Amendment's warrant requirement has expanded well beyond the limits of a bona fide community caretaker function that is "totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute." State v. Kramer, 2009 *684 WI 14, ¶ 23, 315 Wis. 2d 414, 759 N.W.2d 598 (internal quotes and citations omitted).
¶ 80. With today's decision, community caretak-ing has again become an end in itself, justifying warrantless impoundments so long as the police can articulate "a hypothetical community need." Matalonis, 366 Wis. 2d 443, ¶ 106 (Prosser, J., dissenting). The majority embraces the State's hypothetical. It reasons that the police served a legitimate public interest by impounding a vehicle that inconvenienced a private business and its customers and created a hazard by obstructing vehicle traffic through the storage facility. Majority op., ¶ 32.
¶ 81. Not only has the majority opinion lowered the floor by deviating from the national trend requiring standardized criteria, it also has opened a trap door so that the community caretaker exception may become bottomless. If the community caretaker im-poundment of Asboth's vehicle parked on private property can be justified due to inconvenience, would any warrantless seizure be unreasonable in this context? When an exception to the Fourth Amendment becomes the rule, the privacy rights of motorists do not receive the constitutional protections they deserve.
¶ 82. Accordingly, I respectfully dissent.
f 83. I am authorized to state that Justice SHIRLEY S. ABRAHAMSON joins this dissent.

 The parties disagree regarding which policy governed the impoundment, but as set forth below, this issue is not disposi-tive to my analysis because neither policy sufficiently limits police discretion.

 The sheriffs department policy states in relevant part:
Deputies of the Dodge County Sheriffs Department are authorized to arrange for towing of motor vehicles under the following circumstances:
When any vehicle has been left unattended upon a street or highway and is parked illegally in such a way as to constitute a definite hazard or obstruction to the normal movement of traffic;
[[Image here]]
When the driver of a vehicle has been taken into custody by a deputy, and the vehicle would thereby be left unattended;
[[Image here]]
When removal is necessary in the interest of public safety because of fire, flood, storm, snow or other emergency reasons;
[[Image here]]
*678 Unless otherwise indicated, the deputy always has the discretion to leave the vehicle at the scene and advise the owner to make proper arrangement for removal.