*This opinion is nonprecedential except as provided by*
*Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A23-0755**

State of Minnesota,
Respondent,

vs.

Drew Douglas Wiskow Davis,
Appellant.

**Filed April 15, 2024**
**Reversed**
**Slieter, Judge**

Washington County District Court
File No. 82-CR-22-1441

Keith Ellison, Attorney General, St. Paul, Minnesota; and

Kevin M. Magnuson, Washington County Attorney, Andrew T. Jackola, Assistant County Attorney, Stillwater, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, St. Paul, Minnesota; and

Adam G. Chandler, Special Assistant Public Defender, Taft Stettinius & Hollister LLP, Minneapolis, Minnesota (for appellant)

Considered and decided by Wheelock, Presiding Judge; Slieter, Judge; and Schmidt, Judge.

**NONPRECEDENTIAL OPINION**

**SLIETER**, Judge

In this direct appeal from judgments of conviction of unlawful possession of ammunition, receiving stolen property, and check forgery, appellant argues that the district

court erred in denying his pretrial motion to suppress evidence obtained during an illegal seizure. Because the officer failed to articulate a reasonable suspicion of criminal activity, the seizure of appellant was illegal, and we reverse.

**FACTS**

Respondent State of Minnesota charged appellant Drew Douglas Wiskow Davis with possession of ammunition in violation of Minn. Stat. § 624.713, subd. 1(2) (2020); receiving stolen property in violation of Minn. Stat. § 609.53, subd. 1 (2020); and check forgery in violation of Minn. Stat. § 609.631, subd. 3 (2020).

Davis filed a pretrial motion to suppress all evidence obtained from his encounter with law enforcement, claiming the officer seized him without a reasonable, articulable suspicion of criminal activity.

The following facts derive from the suppression hearing. In April 2022, law enforcement received a citizen report that "a black man and white woman were sitting in a black [Chevrolet] Suburban SUV and smoking something" in a Walgreens parking lot. The caller provided a license plate number for the vehicle and "stated that the female was acting erratically."

The responding officer ran a check of the license plate prior to his arrival and found that the "[p]late given [by the informant] did not match the vehicle description" because it was registered to "a blue GMC Yukon" rather than the black Chevrolet Suburban that was reported by the informant.

Upon arriving at Walgreens, the responding officer observed a vehicle matching the description provided in the citizen report. The officer approached the parked vehicle and

2

observed a male in the driver's seat and a "visibly upset" female in the passenger seat, but it "was unknown at that point" whether the female was in danger. The officer did not smell anything consistent with burning illegal substances. Still, the officer gestured for the driver to roll his window down, which he did.

The officer asked the driver and passenger for identification. Before either could provide identification, the officer asked the driver to step out of the vehicle. Instead of exiting the vehicle, the driver fled the scene in the vehicle, leading the officer on a ten-mile chase. The driver was later apprehended, and the evidence supporting the charges was located during a subsequent search of the vehicle.

The district court denied the suppression motion, finding that the officer "had a basis for the initial seizure" and that "even if there was no basis for the initial seizure, [Davis'] act of fleeing in the vehicle was an independent and intervening circumstance that purged the taint of an illegal seizure."

Following a stipulated-facts trial, the district court found Davis guilty of all three counts. The district court convicted Davis and executed concurrent prison sentences for each count, which resulted in a total of 40 months' imprisonment.

Davis appeals.

## DECISION

**I.    The officer failed to articulate a reasonable suspicion of criminal activity to support a seizure of Davis.**

We review a district court's factual findings in a pretrial suppression order under a clearly erroneous standard. *State v. Gauster*, 752 N.W.2d 496, 502 (Minn. 2008). Whether a seizure is justified by reasonable suspicion of criminal activity is reviewed *de novo*. *State v. Burbach*, 706 N.W.2d 484, 487 (Minn. 2005).

Evidence obtained during an unconstitutional stop or seizure must be suppressed, but an officer may conduct a limited stop without offending the constitution if the officer has a reasonable, articulable suspicion of criminal activity. *State v. Timberlake*, 744 N.W.2d 390, 393 (Minn. 2008). Although the standard for demonstrating reasonable, articulable suspicion is "not high," officers "must articulate a particularized and objective basis for suspecting the particular person stopped of criminal activity." *Id.* (quotations omitted). Thus, "[a] hunch, without additional objectively articulable facts," is not enough. *State v. Diede*, 795 N.W.2d 836, 843 (Minn. 2011). We consider the totality of the circumstances when determining whether an officer had reasonable, articulable suspicion of criminal activity supporting the seizure. *State v. Davis*, 732 N.W.2d 173, 182 (Minn. 2007).

The parties agree that Davis was seized when the officer asked Davis for his identification and to step out of the vehicle. They disagree, however, about whether the officer articulated reasonable suspicion of criminal activity at the point of seizure.

Davis claims that the information that the officer possessed at the time of the seizure was limited to the citizen report—which did not allege criminal activity—and, therefore, the officer lacked reasonable, articulable suspicion to support the seizure. We agree.

A citizen-informant enjoys a presumption of credibility. *State v. Jones*, 678 N.W.2d 1, 12 (Minn. 2004). However, the information "must provide at least some specific and articulable facts to support the bare allegation of criminal activity" if it is to form the sole basis of the seizure. *Olson v. Comm'r of Pub. Safety*, 371 N.W.2d 556, 556 (Minn. 1985). Here, the citizen reported that two individuals were "smoking something" and that one of them was "acting erratically." When the officer arrived on scene, he did not smell anything suggesting that something illegal had been smoked. Therefore, the citizen report, alone, did not provide the officer with reasonable, articulable suspicion supporting Davis' seizure.

During the officer's direct examination, he stated that Davis' seizure was based on the citizen report. No additional facts were developed at the suppression hearing regarding the officer's basis for seizing Davis.

During cross-examination, the following colloquy occurred:

> Q: Okay. When you approached the vehicle the person in the driver's seat appeared awake and alert, correct?
> A: Correct.
>
> Q: And, similarly, with the passenger, she seemed awake and alert and not in any apparent danger, correct?
> A: No. She was visibly upset and crying. So, I –
>
> Q: You classify that as danger?
> A: No.

5

Q: Okay. So, then the answer to my question that she didn't appear to be in danger would be, no, she didn't appear in danger, correct?
A: It was unknown at that point.

. . . .

Q: Okay. Your report does not indicate smelling anything consistent with, say, burning illegal substances, correct?
A: Correct.

Q: Okay. In fact, your report doesn't make any mention of the scent of even burning tobacco, correct?
A: Correct.

. . . .

Q: You, yourself, saw no violations of any law when you encountered Mr. Davis behind the wheel, correct?
A: Correct.

Q: But yet you initiated the contact?
A: Correct.

. . . .

Q: Where is the suspicion then, Officer?
A: It's in what the caller told us and they – in doing so they – it's our job to go investigate that further to see if there is criminal activity.

Q: But you said you saw none as you approached the vehicle, correct?
A: Correct.

There was no redirect by the prosecutor.

Here, the officer articulated no objective basis to suspect criminal activity to support

the seizure of Davis. *See State v. Cripps*, 533 N.W.2d 388, 391 (Minn. 1995) ("The officer

must be able to articulate at the omnibus hearing that he or she had a particularized and

6

objective basis for suspecting the seized person of criminal activity."). Instead, the officer specifically admitted during cross-examination that his suspicion was based on the citizen report, which, as we have already explained, contained no facts suggesting Davis was engaged in criminal activity. The officer testified that he observed no illegal conduct during the interaction but was instead investigating the citizen report. *Timberlake*, 744 N.W.2d at 393 ("Police must be able to articulate more than an inchoate and unparticularized suspicion or hunch of criminal activity." (quotations omitted)). Because the officer failed to articulate an objective basis for suspecting Davis of criminal activity, the seizure was illegal.[1]

## II. The act of Davis fleeing is not an intervening circumstance that purged the state of an illegal seizure.

The exclusionary rule provides that evidence seized in violation of the constitution generally must be suppressed. *State v. Jackson*, 742 N.W.2d 163, 178 (Minn. 2007). Whether the exclusionary rule prohibits the admission of evidence in a particular case is a question of law reviewed *de novo*. *State v. Askerooth*, 681 N.W.2d 353, 359 (Minn. 2004).

There are several factors to consider when determining whether evidence is fruit of the poisonous tree, including:

> (1) the purpose and flagrancy of the officer's misconduct,
> (2) the presence of intervening circumstances, (3) whether it is
> likely the evidence would have been obtained in the absence of

---

[1] The state did not argue before the district court, nor before this court, that mismatched license plates formed the basis of illegal conduct. *See, e.g.*, *Diede*, 795 N.W.2d at 845 ("Using license plates on any vehicle other than the one to which it is registered is a misdemeanor that could be a sufficient basis for a traffic stop."). During oral argument, counsel for the respondent explained that ownership of the vehicle used by Davis was a cause of confusion and, in any event, was not known by the officer when Davis was seized.

the illegality, and (4) the temporal proximity of the illegality and the evidence alleged to be the fruit of the illegality.

*State v. Bergerson*, 659 N.W.2d 791, 797 (Minn. App. 2003) (citing *State v. Warndahl*, 436 N.W.2d 770, 776 (Minn. 1989)). Because "we must balance all of these factors," we consider each in turn. *Id.* ("No single factor is dispositive." (citing *State v. Weekes*, 268 N.W.2d 705, 709 (Minn. 1978))).

### *Purpose and Flagrancy of the Misconduct*

The conduct of the officer was not particularly flagrant. Because the officer lacked reasonable suspicion, the seizure of Davis was illegal, which is precisely the type of conduct that the exclusionary rule is intended to prevent. *Id.* at 798. This factor favors suppression.

### *Presence of Intervening Circumstances*

Resisting arrest and flight from an officer, even if prompted by an illegal arrest, may be "intervening circumstances sufficient to purge the illegality of its primary taint." *State v. Ingram*, 570 N.W.2d 173, 178 (Minn. App. 1997), *rev. denied* (Minn. Dec. 22, 1997). However, fleeing without confrontation involving physical resistance to arrest, is insufficient to purge the state of its illegal conduct. *Bergerson*, 659 N.W.2d at 798 ("Bergerson's flight, without physical resistance, did not present an intervening circumstance sufficient to purge the taint of illegality.").

The record indicates that Davis shut the door and slowly reversed the vehicle, avoiding the officer's squad car which was partially obstructing the rear driver side of the

vehicle, and then fled.  Davis did not physically confront or interfere with the officer and, instead, merely fled.  This factor favors suppression.

### *Likelihood of Discovery Without the Illegality*

Without the illegal seizure, it is unlikely that the state would have discovered the illegal weapon or the evidence of receiving stolen property and check forgery.[2]  This factor favors suppression.

### *Temporal Proximity*

"A close temporal proximity favors exclusion."  *State v. Olson*, 634 N.W.2d 224, 229 (Minn. App. 2001).  Davis and the evidence obtained were apprehended immediately following his flight.  This factor favors exclusion.

Upon balancing the four factors, we conclude that the evidence was the fruit of the poisonous tree, and Davis fleeing did not create an intervening circumstance that purged the state of its illegal seizure.

**Reversed.**

---

[2] We note that the state did not argue inevitable discovery on appeal.  Given Davis' flight that resulted in a high-speed chase exceeding 100 miles per hour, police likely had independent probable cause to arrest Davis for reckless driving.  Once lawfully arrested, the state may have had an argument for inevitable discovery of the otherwise illegally seized evidence.  *See State v. Robb*, 605 N.W.2d 96, 104 (Minn. 2000) (citing *Nix v. Williams*, 467 U.S. 431, 444 (1984)) (explaining the inevitable-discovery doctrine and noting that "[o]nce a vehicle is in police custody, warrantless inventory searches are constitutional").  But respondent did not argue—or even mention—the inevitable-discovery doctrine as a separate basis to affirm and, therefore, that argument is forfeited.  *Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn. 1988).