STATE of Minnesota, Appellant,

v.

Eddie WHITE, Respondent.

No. C4–90–1430.

Supreme Court of Minnesota.

Sept. 25, 1992.

Rehearing Denied Nov. 3, 1992.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Michael O. Freeman, Hennepin County Atty., and Donna J. Wolfson, Asst. County Atty., Minneapolis, for appellant.

John M. Stuart, State Public Defender and Lawrence W. Pry, Asst. State Public Defender, St. Paul, for respondent.

## OPINION

COYNE, Justice.

Defendant was convicted of possession of a controlled substance in the third degree in violation of Minn.Stat. § 152.023, subd. 2(2) (1989). The court of appeals, in a 2–1 decision holding that the search of defendant's car violated the Fourth Amendment of the United States Constitution, "reverse[d] and remand[ed] for [an] evidentiary hearing on whether [the] police would have discovered the evidence, inevitably, without the unconstitutional search." *State v. White*, 468 N.W.2d 556, 558 (Minn. App.1991). We reverse the decision of the court of appeals and reinstate the judgment of conviction.

On the morning of November 2, 1989, a park police officer was on his way to give a talk to a youth group at Webber Park in

North Minneapolis when he saw defendant's car, which had neither front nor rear license plates, make an unsignaled left turn. As the officer turned the corner he saw that the driver, the defendant, was parking the car. Defendant got out and, after making eye contact with the officer, walked into a nearby front yard, ignoring two requests from the officer that he stop and talk. Finally, after a third request, defendant responded.

The officer radioed in the stop, then asked defendant for his license. Defendant said that it had been taken away by a law enforcement agency in Illinois. The officer then asked to see some other identification. Instead of pulling out his wallet, defendant reached inside the open window of the car, removed from the sun visor a traffic citation in the name of Jamal Whitted, offered it to the officer, and said his name was Jamal Whitted. Defendant then pointed to a temporary permit in the rear window of the car, which the officer had not seen because of metal louvers at the window. The permit bore the name Eddie White. Defendant claimed that that was his cousin's name.

Because defendant's identification was both inadequate and highly suspicious, the officer had defendant sit in the back of the squad car while he ran an identification check. The officer asked defendant to give his middle name and defendant said "Lorenzo." Asked to spell it, defendant first said, "L–E–N–R–E–Z–O." Asked to spell it again, defendant said, "L–E–R–N–Z–O."

Considering defendant's assertions of identity untrustworthy, the officer returned to the car to look for further identification. When he entered the driver's side he saw in plain view on the passenger seat an open duffle bag containing a wad of money and, protruding from the bag, a plastic tube containing white powder. The officer, without touching the contents of the defendant's car, returned to the squad car and called his captain. After talking with his captain, the officer told defendant he was under arrest for possession of narcotics.

To guard against leaving fingerprints or exposing himself to toxic substances, the officer went to his brief case in the trunk to get his rubber gloves. Realizing that the gloves were in his jacket in the back of the squad car, he opened the rear door and reached in to get the jacket. Defendant then kicked open the door and tried to flee. At one point as the officer tried to restrain defendant, defendant tugged at the officer's gun. Eventually, after a brief chase, the officer, with gun pointed, got defendant to stop.

When help arrived, defendant was again placed in the back of the officer's squad car. After being given a *Miranda* warning, he said that his name was Eddie White, that he owned the car, and that the duffle bag in the car was his.

In a subsequent search of the car at the scene officers seized $3,000 in cash, 27.9 grams of 95.9% pure cocaine with a street value of $5,600, and, hidden in the trunk, a police scanner tuned to the Minneapolis–St. Paul Police Department frequencies.

At trial defendant claimed some acquaintance, possibly a person named "Shane," owned the duffle bag. He said the duffle bag he was referring to when he admitted owning one was a duffle bag in the trunk. It appears that there was also a duffle bag in the trunk.

■ The defendant concedes that the officer had a valid, objective basis for the stop, but contends that the officer exceeded the scope of a *Terry* search by entering the defendant's car to search for identification papers. The United States Supreme Court and this court have consistently ruled that in the course of a *Terry* stop police may direct a person to provide identification. *United States v. Hensley*, 469 U.S. 221, 229, 105 S.Ct. 675, 680, 83 L.Ed.2d 604 (1985); *Michigan v. Summers*, 452 U.S. 692, 700–01, n. 12, 101 S.Ct. 2587, 2593, n. 12, 69 L.Ed.2d 340 (1981); *State v. Schinzing*, 342 N.W.2d 105, 109 (Minn.1985); *State v. Pleas*, 329 N.W.2d 329 (Minn.1983); 3 W. LaFave, *Search and Seizure* § 9.2(f) at 375 (2d ed. 1987). As we said in *Schinzing*,

Requesting a stopped driver to show his license is standard procedure in stop cases. Any rule that in certain stop cases police cannot request the driver's license would create unnecessary confusion among the police.

342 N.W.2d at 109.

The issue here is what happens if, in response to a police officer's perfectly legitimate request for identification, the person stopped refuses to provide any identification or provides obviously false identification. May the police officer then make a limited search for identification? Or may the person stopped bar standard procedure and the officer's ability to discover the person's true identity "by just saying No?" The United States Supreme Court has not decided the issue, and neither have we. *See State v. Frazier*, 318 N.W.2d 42, 44, n. 1 (Minn.1982) (expressly declining to decide the issue). Because we conclude that the search in this case can be sustained as a search incident to arrest, we again expressly decline to decide the search-for-identification issue.

The court of appeals took the position that the search-incident-to-arrest cases cannot be relied upon as support for the entry and search of the car because, although the officer clearly had probable cause to arrest defendant for driving without a license and for giving false identification to the police, (a) there was no need to search the car for evidence of those offenses, (b) the defendant was not arrested for either of those offenses, and (c) the car was not under the defendant's immediate control or in his immediate vicinity when he was in the back of the squad car. *See State v. White*, 468 N.W.2d 556, 560–61 (Minn.App.1991).

■ It seems to us, however, as it did to the dissenter below, that entry and search of the vehicle was permissible under the "bright line" rule established in *New York v. Belton*, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981) and cases of this court relying on *Belton*. The basic holding of *Belton* is that when a police officer has made a lawful custodial arrest of the occupant of an automobile, the officer may, as a contemporaneous incident of the arrest, search the passenger compartment of the car and any containers found within the passenger compartment.

■ That the officer arrested defendant for possession of a controlled substance after the search of his automobile rather than for driving without a license or for giving a false or fictitious name to the officer does not, in our opinion, convert the search into an unlawful search of the kind proscribed in *Smith v. Ohio*, 494 U.S. 541, 543, 110 S.Ct. 1288, 1290, 108 L.Ed.2d 464 (1990) (arrest of pedestrian based on contraband discovered in search of grocery bag made without warrant or probable cause).[1]

Moreover, the fact that this novice officer had not formally placed defendant under arrest but was continuing to proceed on a *Terry* stop rationale does not foreclose the state from subsequently justifying the custody of defendant by establishing that objective probable cause to arrest existed, thereby in turn justifying the search as an incidental search. Under the objective test of probable cause which we use, the issue is whether there was objective probable cause to arrest. Thus, in *Florida v. Royer*, 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983), the Court said the fact the officer testified at a suppression hearing that he did not believe there was probable cause and the fact he proceeded on a *Terry* stop rationale did not foreclose the state from justifying the defendant's custody by proving the existence of probable cause. *See* 1 W. LaFave, *Search and Seizure* § 3.2(b) at 568–69 (2d ed. 1987).[2] Here the novice officer was simply being prudent and stick-

---

1. *Smith v. Ohio* stands for the proposition that a search may not be justified on incident-to-arrest grounds if probable cause for the arrest was a fruit of the search; that is, bootstrapping is not permitted. But "a search * * * will qualify as incident to a subsequent arrest if the probable cause for the arrest existed prior to the search." W. LaFave, *Search and Seizure* § 5.5(a) at n. 0.1

(2d ed. 1987 and Supp.1991) (discussing *Smith, supra* ). *See also* discussion in n. 2 of this opinion, *infra*.

2. Justice Traynor of the California Supreme Court was ahead of his time when he said:

Thus, if the officer is entitled to make an arrest on the basis of information available to

ing to the investigatory stop scenario when he entered the car to look for identification papers. But in fact he had objective probable cause then and there to arrest defendant for driving without a license and for giving false information to a police officer. Therefore, to the extent he could search incident to the arrest, the search can be justified as a contemporaneous incidental search, particularly where, as here, defendant was contemporaneously [within the meaning of *Rawlings v. Kentucky* 448 U.S. 98, 111, 100 S.Ct. 2556, 2564–65, 65 L.Ed.2d 633 (1980) (discussed in footnote 2)] formally placed under arrest.

■ The issue then becomes whether the court of appeals followed *Belton* and cases of this court relying on *Belton*, and the answer is that it did not. As we made clear in *State v. Rodewald*, 376 N.W.2d 416 (Minn.1985), the *Belton* rule is a "bright line" rule authorizing a contemporaneous search of the passenger compartment of a car, including any containers found therein,

him before he searches, and as an incident to that arrest is entitled to make a reasonable search * * *, there is nothing unreasonable in his conduct if he makes the search before instead of after the arrest. In fact, if the person searched is innocent and the search convinces the officer that his reasonable belief to the contrary is erroneous, it is to the advantage of the person searched not to be arrested. On the other hand, if he is not innocent or the search does not establish his innocence, the security of his person, house, papers, or effects suffers no more from a search preceding his arrest than it would from the same search following it.

*People v. Simon,* 45 Cal.2d 645, 648, 290 P.2d 531, 533 (1955). In *Peters v. New York,* 392 U.S. 40, 68, 88 S.Ct. 1912, 20 L.Ed.2d 917 (1968), one of the companion cases to *Sibron v. New York,* 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1963), the majority, upholding the discovery of evidence on the basis of search incident to arrest (rather than stop and frisk, as the state contended) emphasized that "the arrest had for purposes of constitutional justification, already taken place before the search commenced." Justice Harlan, concurring, said:

In the course of upholding Peters' conviction, the Court makes [a point] that may lead to future confusion. [The point] concerns the "moment of arrest." If there is an escalating encounter between a policeman and a citizen, beginning perhaps with a friendly conversation but ending in imprisonment, and if evidence is developing during that encounter, it may be important to identify the moment of arrest, *i.e.,* the moment when the policeman was not permitted to proceed further unless he by then had probable cause. This moment-of-arrest problem is not, on the Court's premises, in any way involved in this case: the Court holds that Officer Lasky had probable cause to arrest at the moment he caught Peters, and hence probable cause clearly preceded anything that might be thought an arrest. The Court implies, however, that although there is no problem about whether the arrest of Peters occurred *late* enough, *i.e.,* after probable cause developed, there might be a problem about whether it occurred *early* enough, *i.e.,* before Peters was searched. This

seems to me a false problem. *Of course, the fruits of a search may not be used to justify an arrest to which it is incident, but this means only that probable cause to arrest must precede the search.* If the prosecution shows probable cause to arrest prior to a search of a man's person, it has met its total burden. There is *no* case in which a defendant may validly say, "Although the officer had a right to arrest me at the moment when he seized me and searched my person, the search is invalid because he did not in fact arrest me until afterwards."

This fact is important because, as demonstrated by *Terry,* not every curtailment of freedom of movement is an "arrest" requiring antecedent probable cause. At the same time, an officer who does have probable cause may of course seize and search immediately. Hence while certain police actions will undoubtedly turn an encounter into an arrest requiring antecedent probable cause, the prosecution must be able to date the arrest as *early* as it chooses following the development of probable cause.

392 U.S. at 76–77, 88 S.Ct. at 1909. This view now appears to be the view of the majority of the United States Supreme Court, because in *Rawlings v. Kentucky,* 448 U.S. 98, 111, 100 S.Ct. 2556, 2564–65, 65 L.Ed.2d 633 (1980), it concluded that "[w]here the formal arrest followed quickly on the heels of the challenged search of [the defendant's] person, we do not believe it particularly important that the search preceded the arrest rather than vice versa," as long as the evidence discovered was "not necessary to support probable cause to arrest." Professor La-Fave concludes therefore that there is "ample authority to support the proposition stated by Justice Harlan" in the concurring opinion in *Peters.* 2 W. LaFave, § 5.4(a) at 517 (2d ed. 1987). Indeed, Professor LaFave makes a persuasive argument, on the basis of *Cupp v. Murphy,* 412 U.S. 291, 93 S.Ct. 2000, 36 L.Ed.2d 900 (1973), that someday the Court might well extend the rule of *Rawlings* and hold that even if the defendant is not arrested contemporaneously with the search the police may subject the person to a search to the same degree that would be permitted incident to arrest if there is in fact probable cause to arrest. *Id.* at 5.4(b).

incident to the arrest of an occupant without the police having to make a particularized showing of need to conduct the search in order to find weapons or evidence. Similarly, the fact that the defendant is in the squad car at the time the search occurs is irrelevant because *Belton* expressly foreclosed the need for a case-by-case determination of the arrestee's control of the car. Thus, under *Belton,* an incidental search of the car is allowed even after the defendant is placed in the squad car. 3 W. LaFave, *Search and Seizure* § 7.1(c) at 15 (2d ed. 1987).

In summary, the police officer's entry into defendant's car was justified by cases of both the United States Supreme Court and this court, and we conclude that the court of appeals erred in reversing defendant's drug conviction. We therefore reverse the decision of the court of appeals and reinstate the judgment of conviction.

Reversed and judgment of conviction reinstated.