**STATE of Minnesota, Respondent,**

v.

**Antoine Lamonte HOLLINS, Appellant.**

**No. A09–1865.**

Court of Appeals of Minnesota.

Oct. 5, 2010.

246

Lori Swanson, Attorney General, St. Paul, MN; and Michael O. Freeman, Hennepin County Attorney, Lee W. Barry, Assistant County Attorney, Minneapolis, MN, for respondent.

David W. Merchant, Chief Appellate Public Defender, Bridget Kearns Sabo, Assistant Public Defender, St. Paul, MN, for appellant.

Considered and decided by HALBROOKS, Presiding Judge; STONEBURNER, Judge; and STAUBER, Judge.

## OPINION

STAUBER, Judge.

On appeal from his conviction of felon in possession of a firearm, appellant argues that (1) the district court erred by denying his motion to suppress evidence of his identity that was discovered during a limited search of appellant and (2) the district court abused its discretion by allowing into evidence a gun, round, and magazine that could not be directly linked to him. We affirm.

## FACTS

On the evening of January 16, 2009, appellant arrived at a nightclub in downtown Minneapolis. There was live music at the club, and prior to admittance, all patrons proceeded through a metal detector and were pat-searched for weapons by club security. Nathan Enget, one of the club's security guards, checked more than 800 people that evening. Upon entering the club, appellant set off the metal detector. Enget then pat-searched appellant and discovered a loaded handgun in the waistband of appellant's pants, at which point appellant stated, "[m]y bad, I forgot, I can take it back to my car." Enget called out to his supervisor, Reginald Prince, stating, "hey, he [sic] got a gun." Enget handed the gun to Prince who told Enget to allow appellant into the club because he did not want appellant to get angry and leave, believing it was the best way to control the situation. Prince then "took the magazine out [of the gun] and realized the handle was cocked ... and removed a live cartridge inside."

Prince told his supervisor, John Barlow, what had occurred and Barlow summoned the assistance of two Minneapolis police officers who were working a security detail that evening for an association of bars and restaurants in the warehouse district. Prince gave the gun, magazine, and round to the police who then secured it in the trunk of their squad car. Two club bouncers were instructed to locate appellant inside the club and bring him outside to the officers. The police officers testified that it was very cold, there was a large crowd outside the nightclub, and they did not know whether any of appellant's associates was in this group of people. The officers testified that in order to minimize any potential danger to themselves or others, they decided to handcuff appellant and put him in their squad car for questioning. The police then asked appellant for his name. When appellant would not reply, one of the officers took appellant's wallet out of his pocket to obtain his identification. The officers entered his name into the squad-car computer and determined that appellant was ineligible to possess a firearm because "he had prior convictions for felon in possession of a handgun" and that "he was also a registered gang member." The officers then placed appellant under arrest for felon in possession of a firearm in violation of Minn.Stat. § 624.713, subd. 1(2) (2008).

Appellant moved to suppress the police officers' discovery of his identity as the fruit of an unlawful search. Following an omnibus hearing, the district court denied the motion. The parties stipulated to appellant's status as a felon and the jury was informed that appellant is prohibited from possessing a firearm pursuant to Minnesota law. The jury found appellant guilty of violating Minn.Stat. § 624.713 (2008), as a person prohibited from possessing a firearm. This appeal followed.

## ISSUES

I. Did the district court err by denying appellant's motion to suppress identity evidence discovered during the limited search?

II. Did the district court abuse its discretion by admitting into evidence the gun, round, and magazine?

## ANALYSIS

### I.

 "When reviewing pretrial orders on motions to suppress evidence, we may independently review the facts and determine, as a matter of law, whether the district court erred in suppressing—or not suppressing—the evidence." *State v. Harris*, 590 N.W.2d 90, 98 (Minn.1999). The district court's findings of fact are reviewed for clear error. *State v. Lee*, 585 N.W.2d 378, 383 (Minn.1998).

 The United States and Minnesota Constitutions guarantee individuals the right to be free from unreasonable searches and seizures. U.S. Const. amend. IV; Minn. Const. art. I, § 10. But "an officer may, consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion [of] criminal activity." *Illinois v. Wardlow*, 528 U.S. 119, 123, 120 S.Ct. 673, 675, 145 L.Ed.2d 570 (2000) (citing *Terry v. Ohio*, 392 U.S. 1, 30, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889 (1968)); *State v. Waddell*, 655 N.W.2d 803, 809 (Minn.2003). "Reasonable suspicion must be based on specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *State v. Davis*, 732 N.W.2d 173, 182 (Minn.2007) (quotation omitted). The Minnesota Supreme Court has recognized that "the reasonable suspicion standard is not high." *State v. Timberlake*, 744 N.W.2d 390, 393 (Minn.2008) (quotation omitted). A police officer may make his decision based on the circumstances as a whole and may make inferences and deductions that may not be obvious to an untrained person. *Harris*, 590 N.W.2d at 99. However, the officer must "be able to articulate something more than an inchoate and unparticularized suspicion or hunch." *State v. Martinson*, 581 N.W.2d 846, 850 (Minn.1998) (quotations omitted). Reviewing courts consider the totality of the circumstances in determining whether the police had justification for a *Terry* stop. *State v. Britton*, 604 N.W.2d 84, 87 (Minn.2000).

 Appellant argues that the search of his pockets and wallet was unjustified and unconstitutional and that the search did not fit into any of the recognized exceptions to the rule against warrantless searches as it was not a protective pat-search, nor a search incident to a lawful arrest. Although appellant accepts the premise that the police called to the scene had the requisite reasonable suspicion to conduct a *Terry* stop, he argues that the investigatory stop was limited to only a search for weapons. Thus, appellant contends that the district court erred by denying his motion to suppress evidence of his identity as the fruit of an unlawful search.

To support his claim, appellant cites *State v. Fox*, 283 Minn. 176, 168 N.W.2d 260 (1969). In that case, the police obtained a search warrant for a woman's apartment allowing them to seize certain property; the warrant did not include a search of the defendant who happened to be at the apartment when the search was conducted. 283 Minn. at 178–79, 168 N.W.2d at 261. The police pat-searched the defendant and found a wallet with marijuana inside. *Id.* at 179, 168 N.W.2d at 261. The supreme court held that absent probable cause, the officers did not have the right to search the defendant and

obtain his wallet. *Id.* at 180, 168 N.W.2d at 262–63.

Relying on *Fox*, appellant argues that, absent probable cause, a limited search for identification violates the Fourth Amendment protection against illegal searches and seizures. *See id.* at 178–79, 168 N.W.2d at 262 (stating that "the right of police officers to stop a suspicious person does not extend to a right of search in the absence of probable cause"). Appellant presents a compelling argument—one that has been raised before, but not decided, by our supreme court.

The United States Supreme Court and the Minnesota Supreme Court have consistently ruled that in the course of a *Terry* stop, police may direct a person to provide identification. *United States v. Hensley*, 469 U.S. 221, 229, 105 S.Ct. 675, 680, 83 L.Ed.2d 604 (1985); *Michigan v. Summers*, 452 U.S. 692, 700–01 n. 12, 101 S.Ct. 2587, 2593 n. 12, 69 L.Ed.2d 340 (1981); *State v. White*, 489 N.W.2d 792, 793 (Minn. 1992); *State v. Schinzing*, 342 N.W.2d 105, 109 (Minn.1983). But in *White*, the Minnesota Supreme Court speculated as to whether a person can hide his true identity "by just saying No" when asked to identify himself. 489 N.W.2d at 794. The court concluded that "[t]he United States Supreme Court has not decided the issue, and neither have we." *Id.* The court went on to hold that the officer's search of the car for identification could be sustained as a search incident to arrest, and therefore the court declined to decide the search-for-identification issue. *Id.*; *see also State v. Frazier*, 318 N.W.2d 42, 44 n. 1 (Minn.1982) (expressly declining to decide whether, in certain circumstances, police may conduct a limited identification search of a person lawfully stopped for a temporary investigation).[1]

The narrow issue before us is whether, under the circumstances of this case, the police were justified in performing a limited search of appellant to obtain his identification. Despite appellant's argument to the contrary, the supreme court in *Fox* indicated that there may be circumstances where it is necessary for law enforcement to conduct a limited search in order to obtain a suspect's identification. Specifically, the court in *Fox* also observed:

> [P]ersons found under suspicious circumstances are not clothed with a right of privacy which prevents law-enforcement officers from inquiring as to their identity and actions. The essential needs of public safety permit police officers to use their faculties of observation and to act thereon within proper limits. It is not only the right but the duty of police officers to investigate suspicious behavior, both to prevent crime and to apprehend offenders.

*Id.* at 178, 168 N.W.2d at 262 (quotations omitted); *see also* 4 Wayne R. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* § 9.6(g) (4th ed.2004) (discussing the possibility that the Fourth Amendment allows an officer to conduct a limited search for identification when a person is lawfully detained for investigation and refuses to identify himself).

In analyzing the issue before us, we must consider Minn.Stat. § 624.714, subd. 1a (2008), which makes it unlawful for someone other than a peace officer to car-

---

1. Courts in other jurisdictions vary on whether the police may search a person for identification. *Compare State v. Flynn*, 92 Wis.2d 427, 285 N.W.2d 710, 719–20 (1979) (where a person involved in suspicious activity refused to provide identification to a police officer who requested it, the officer could search him for such identification), *with State v. Webber*, 141 N.H. 817, 694 A.2d 970, 972 (1997) (rejecting *Flynn* and prohibiting an "identification search" of a motorist who was stopped for speeding).

ry, hold, or possess a pistol in a public place without a permit to carry it. Minnesota law also requires a permit holder to have the permit and a government-issued identification "at all times when carrying a pistol and must display the permit card and identification document *upon lawful demand* by a peace officer." Minn.Stat. § 624.714, subd. 1b (2008) (emphasis added).

Recently, the Minnesota Supreme Court reiterated that Minn.Stat. § 624.714, subd. 1a, is "properly characterized as a 'general prohibition' on the possession of firearms in public because '[a]nyone having a firearm in a public place may be prosecuted if he has no permit.'" *Timberlake*, 744 N.W.2d at 394 (quoting *State v. Paige*, 256 N.W.2d 298, 303 (Minn.1977)). The court noted that the "without a permit" language does not add another element of the crime of carrying a pistol in a public place; rather the language "without a permit" creates an exception to criminal liability that places the burden on the defendant to produce some evidence of a permit. *Id.* at 394–95. The court went on to hold that based on an informant's report that he saw the defendant with a gun in a vehicle, the police had a reasonable basis to suspect that the defendant was engaged in criminal activity despite a lack of knowledge as to whether the defendant had a permit. *Id.*

Here, appellant was a person found under suspicious circumstances; that is, attempting to enter a crowded public nightclub with a cocked, loaded handgun concealed under his clothing contrary to signage prohibiting guns on the premises. Further, nightclub security called police to the scene specifically because of appellant's activity and turned him over to the officers' custody. The information that appellant was in possession of the loaded handgun gave the police officers a basis to suspect criminal activity and make a lawful demand for identification under Minn.Stat. § 624.714, subd. 1b (2008). *See Timberlake*, 744 N.W.2d at 394–95. Once the officers made a lawful demand for identification, the burden shifted to appellant to produce the necessary information. When appellant refused the officers' request to produce identification, the officers were faced with two options: (1) release appellant without further investigation or (2) conduct a limited identification search of appellant. Because appellant was in violation of the statute, and the violation triggered public safety concerns, the only reasonable option presented to the officers under the narrow circumstances presented here was to conduct a limited search of appellant for identification.

We also note that even if a limited search for appellant's identification was not permitted through the Fourth Amendment, the identification would have been lawfully obtained under a valid search incident to arrest. The Minnesota Rules of Criminal Procedure, in effect at the time of the incident, provide:

Law enforcement officers acting without a warrant, who have decided to proceed with prosecution, shall issue citations to persons subject to lawful arrest for misdemeanors, unless it reasonably appears to the officer that arrest or detention is necessary to prevent bodily harm to the accused or another or further criminal conduct, or that there is a substantial likelihood that the accused will fail to respond to a citation. The citation may be issued in lieu of an arrest, or if an arrest has been made, in lieu of continued detention. If the defendant is detained, the officer shall report to the court the reasons for the detention. Ordinarily, for misdemean-

ors not punishable by incarceration, a citation shall be issued.

Minn. R.Crim. P. 6.01, subd. 1(1)(a) (2006) (amended 2010).

Here, appellant was suspected of possessing a firearm in public without a permit, a gross misdemeanor. *See* Minn.Stat. § 624.714, subd. 1a. But, appellant would not provide the officers with any identification. Thus, the only possible way the officers could have issued the citation in this case was to arrest appellant (or as the officers did here, conduct a limited search of appellant for identification). Moreover, because appellant failed to produce any identification, there was a substantial likelihood that appellant would fail to respond to a citation. Accordingly, the officers could have arrested appellant for violating Minn.Stat. § 624.714, rendering any subsequent search incident to the arrest valid under the Fourth Amendment.

Citing the portion of section 624.714, subdivision 1b, that requires a person to "display the permit card and identification document upon lawful demand by a peace officer," appellant argues that if the police have probable cause to arrest someone for carrying a pistol without a permit, but do not ask the person to present the permit, then the law is meaningless. Appellant contends that the officers did not make a "lawful demand" for a permit to possess the pistol, and thus the district court erroneously concluded that appellant's failure to provide identification justified the officer's identification search.

We disagree. Appellant's argument is based on a hyper-technical interpretation of the statute. The statute mandates that if a person is requested to produce a permit to possess a handgun, corresponding identification must also be produced.

Minn.Stat. § 624.714, subd. 1b. But, advances in technology allow law enforcement to determine whether a person has a permit to possess a handgun simply by the production of identification. Thus, with the police officers' computer readily available at their fingertips, the mere request for identification had the same effect of asking appellant to display his identification *and* permit. Moreover, had the officers asked appellant to produce a permit to carry, instead of asking him for his name, it is hard to imagine a different outcome. Therefore, we conclude that the officers' request for appellant's name was the equivalent of making a lawful demand for a permit to carry a pistol or a state identification card, any one of which would be sufficient for a computer identification search.[2]

## II.

Appellant argues that because the state could not directly connect the gun to appellant, the district court abused its discretion by overruling appellant's chain of custody objections and admitting into evidence the gun, the round, and the magazine. "Evidentiary rulings rest within the sound discretion of the trial court and will not be reversed absent a clear abuse of discretion. On appeal, the appellant has the burden of establishing that the trial court abused its discretion and that appellant was thereby prejudiced." *State v. Amos*, 658 N.W.2d 201, 203 (Minn.2003) (citations omitted). Chain-of-custody issues are left to the sound discretion of the trial court. *State v. Johnson*, 307 Minn. 501, 504, 239 N.W.2d 239, 242 (1976).

The "chain of custody" rule requires the prosecution to account for the physical evidence in connection with a crime from when it was seized to the time

---

**2.** Because we conclude that appellant's identity was lawfully obtained, we need not address the issue of whether appellant's identity is suppressible as fruit of the poisonous tree.

it was offered at trial, ensuring that "(1) the evidence offered is the same as that seized, and (2) it is in substantially the same condition." *Id.* This assures that the items have not been contaminated, altered, or switched for more incriminating evidence. *Id.* "Admissibility should not depend on the prosecution negativing all possibility of tampering or substitution, but rather only that it is reasonably probable that tampering or substitution did not occur." *Id.* at 505, 239 N.W.2d 239. "The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Minn. R. Evid. 901(a). All possibility of alteration, substitution, or change of condition does not need to be eliminated when laying a chain-of-custody foundation. *State v. Hager,* 325 N.W.2d 43, 44 (Minn.1982). Ultimately, the trier of fact decides whether the item of real evidence admitted in evidence is as it is purported to be. *Hager,* 325 N.W.2d at 45.

At trial, Enget, who initially pat-searched appellant at the entry of the nightclub, was unable to positively "100%" identify appellant and the gun offered into evidence. Although appellant concedes the same chain of custody for the gun applies equally to the round and magazine, he argues that since Enget cannot positively establish a connection between appellant and the gun, the gun was therefore inadmissible.

We disagree. Enget testified that he checked approximately 800 patrons that evening, spending about 10–to–15 seconds with each. Upon removing the gun from appellant, Enget testified that he alerted his supervisor, Prince, and gave him the gun; Prince subsequently disarmed the gun and put the round and magazine in his pocket. Prince then spoke with appellant whom he identified in court. Thereafter, Prince talked to his boss, Barlow, about appellant and the gun found by Enget. Barlow flagged down the two police officers and Prince handed the weapon, the round, and the magazine to the officers whom he identified in court. Although Enget testified that he could not "say for sure" if the gun admitted into evidence was the same gun that appellant possessed at the club, Enget testified that he was positive that the man he took the gun from at the club door was the same man who was handed over to the custody of the Minneapolis police officers. Therefore, the trial testimony of the witnesses establishes that the chain of custody for the gun, the round, and the magazine remained intact, and the district court did not abuse its discretion by admitting them into evidence.

## DECISION

Because appellant's actions as related to the possession of a handgun provided the officers with reasonable suspicion to detain appellant and make a lawful demand for identification, and because appellant refused to answer the officers' request for identification, the police were justified in conducting a limited search for identification. As a result, the district court did not err by denying appellant's motion to suppress evidence of his identity. Moreover, the district court did not abuse its discretion by allowing into evidence the gun, round, and magazine because a sufficient chain of custody had been established.

**Affirmed.**