*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0168**

State of Minnesota,
Respondent,

vs.

Deandre Dynell Burges,
Appellant

**Filed March 2, 2015
Affirmed
Worke, Judge**

Benton County District Court
File No. 05-CR-13-312

Lori Swanson, Attorney General, Matthew G. Frank, Assistant Attorney General, St. Paul, Minnesota; and

Philip Miller, Benton County Attorney, Foley, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Jessica Merz Godes, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Peterson, Presiding Judge; Worke, Judge; and Connolly, Judge.

# UNPUBLISHED OPINION

**WORKE**, Judge

Appellant challenges his convictions of unlawful possession of a firearm and violation of a domestic-abuse no-contact order (DANCO), arguing that evidence of his

identity and gun should have been suppressed as the result of an unlawful search of his wallet seized from his pocket while he was sleeping. We affirm.

**D E C I S I O N**

Appellant Deandre Dynell Burges argues that the unlawful seizure of his wallet led to the discovery of his identity and arrest for violating a DANCO, which then led to the discovery of the gun. He claims that the district court should have suppressed the evidence.

The United States and Minnesota Constitutions prohibit "unreasonable searches and seizures." U.S. Const. amend. IV; Minn. Const. art. I, § 10. "When reviewing pretrial orders on motions to suppress evidence, we may independently review the facts and determine, as a matter of law, whether the district court erred in . . . not suppressing the evidence." *State v. Harris*, 590 N.W.2d 90, 98 (Minn. 1999). We review the district court's findings of fact under a clearly erroneous standard, but legal determinations are reviewed de novo. *State v. Bourke*, 718 N.W.2d 922, 927 (Minn. 2006); *see State v. Anderson*, 733 N.W.2d 128, 136 (Minn. 2007) ("We review de novo a district court's ruling on constitutional questions involving searches and seizures."); *In re Welfare of G.M.*, 560 N.W.2d 687, 690 (Minn. 1997) (stating the standard for reviewing district court's reasonable-suspicion determination for *Terry* stops and probable-cause determination for warrantless searches is de novo).

"[C]onsistent with the Fourth Amendment, [an officer may] conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion [of] criminal activity." *Illinois v. Wardlow*, 528 U.S. 119, 123, 120 S. Ct. 673, 675 (2000) (citing *Terry*

2

*v. Ohio*, 392 U.S. 1, 21, 88 S. Ct. 1868, 1880 (1968)). "Reasonable suspicion must be based on specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *State v. Davis*, 732 N.W.2d 173, 182 (Minn. 2007) (quotation omitted). A police officer's reasonable suspicion is based on the circumstances as a whole and includes his inferences and deductions that may not be obvious to an untrained person. *Harris*, 590 N.W.2d at 99. While the reasonable-suspicion standard is not high, *State v. Timberlake*, 744 N.W.2d 390, 393 (Minn. 2008), it cannot be based on a mere "inchoate and unparticularized suspicion or hunch." *State v. Martinson*, 581 N.W.2d 846, 850 (Minn. 1998) (quotation omitted). This court considers the totality of the circumstances in determining whether the police had justification for a *Terry* stop. *State v. Britton*, 604 N.W.2d 84, 87 (Minn. 2000).

Here, en route to a reported domestic in progress, Officer Allen Braegelmann was advised of a valid DANCO preventing Burges from contacting S.F. Approaching the back of the residence, Officer Braegelmann could hear a male and female yelling from inside. He knocked and announced himself as a police officer and the yelling stopped. S.F. opened the door. The officer asked her where the male was. S.F. responded that he had left, pointing out the door to a vehicle. S.F. then changed her mind and pointed to the front door, claiming that she was uncertain. Officer Braegelmann asked another officer to search the area for Burges; the search was unsuccessful.

S.F. admitted that she had been arguing with Burges. The officer requested to speak with S.F.'s daughter who had called 911. S.F. went upstairs and returned with her daughter who confirmed the argument. S.F. then consented to a search of the residence

3

for Burges for S.F.'s safety.  In one bedroom, officers found small children, in another bedroom they found a sleeping male.  S.F. identified the sleeping man as her cousin, Xavier Lorenzo.  Officer Braegelmann was skeptical about S.F.'s identification because of her previous uncertainty regarding Burges's point of departure from the residence and because officers found no indication that anyone had left.

Officer Braegelmann told the male to wake up, but the male did not comply. Officer Braegelmann unsuccessfully attempted to shake the male awake.  The officer lowered the blankets covering the male and observed a bulge in the male's pocket, which he believed to be a wallet.  After unsuccessful attempts to wake the male, the officer removed the wallet and found Burges's ID inside.  Burges was arrested for violating the DANCO.  Burges was assisted to a sitting position while he continued to appear sleeping. Officers then noticed a blunt object in Burges's pocket, which was a handgun.

While Burges concedes that the 911 call, the officer's knowledge of the DANCO, and S.F.'s admission that she was arguing with Burges gave the officers reasonable suspicion to conduct a brief *Terry* investigation into whether Burges had violated the DANCO, he argues that the search of his wallet exceeded the lawful scope of the investigation.  Burges asserts that at most the officers had a hunch that he was the sleeping male, and without awareness of his description, there was no reason to doubt S.F.'s identification of the man as her cousin.

We disagree.  Officer Braegelmann had reasonable suspicion of criminal activity when he arrived at the residence, based on the 911 call, the officer's knowledge of the DANCO, the officer hearing the argument when he approached, and S.F.'s admission that

4

she had been arguing with Burges. Officer Braegelmann then found a male sleeping upstairs. Even though S.F. identified Burges as her cousin, the officer was skeptical of her identification because of her earlier uncertainty and because officers did not find anyone during their search outside of the residence. Officer Braegelmann testified that he took the wallet out of Burges's pocket because he was investigating the DANCO violation and believed that Burges was inside the residence. Based on the totality of the circumstances, the officer had probable cause to arrest when he found the male sleeping upstairs who was uncooperative in identifying himself.

Police who have probable cause to arrest can conduct a search incident to arrest even if the search occurs before the arrest. *Rawlings v. Kentucky*, 448 U.S. 98, 110-11, 100 S. Ct. 2556, 2564 (1980); *see State v. White*, 489 N.W.2d 792, 795 (Minn. 1992) (upholding search on basis of police officer's objective probable cause to arrest suspect for driving without a license). An officer is allowed to conduct a search incident to arrest of "a person's body and the area within his or her immediate control." *State v. Robb*, 605 N.W.2d 96, 100 (Minn. 2000). A search incident to arrest includes a search of pockets. *State v. Varnado*, 582 N.W.2d 886, 893 (Minn. 1998).

The dispositive question under the search-incident-to-arrest doctrine is whether police had probable cause to believe the suspect had committed a crime. *G.M.*, 560 N.W.2d at 695. Probable cause exists when the "objective facts are such that under the circumstances, a person of ordinary care and prudence would entertain an honest and strong suspicion that a crime has been committed." *Id.* A probable-cause determination

5

evaluates an officer's observations, information, and police experience. *State v. Koppi*, 798 N.W.2d 358, 362-63 (Minn. 2011).

We conclude that the warrantless seizure and search of Burges's wallet were reasonable because the police had probable cause to believe that the sleeping man was Burges, and consequently, had objective probable cause to arrest Burges on the basis of that belief. As for the gun, it was found after Burges was arrested for violating the DANCO. The district court did not err by declining to suppress the evidence of Burges's identity and gun.

**Affirmed.**