*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1503
A14-1504**

State of Minnesota,
Appellant,

vs.

Ashley Shayia Lee,
Respondent (A14-1503),

State of Minnesota,
Appellant,

vs.

Tasheanna Yvonne Moore,
Respondent (A14-1504).

**Filed April 13, 2015
Reversed (A14-1503)
Reversed (A14-1504)
Ross, Judge**

Ramsey County District Court
File Nos. 62-CR-14-3502
             62-CR-14-3500

Lori Swanson, Attorney General, St. Paul, Minnesota; and

John J. Choi, Ramsey County Attorney, Thomas B. Hatch, Assistant County Attorney, St. Paul, Minnesota (for appellant)

Drake D. Metzger, Jessica A. Rajtar, Metzger Law Firm, LLC, Minneapolis, Minnesota (for respondent Lee)

Peter Rainville, Minneapolis, Minnesota (for respondent Moore)

Considered and decided by Ross, Presiding Judge; Kirk, Judge; and Reilly, Judge.

**U N P U B L I S H E D   O P I N I O N**

**ROSS**, Judge

Roseville police stopped a rental car in a Walmart parking lot to investigate an employee's report that two women had just attempted a credit-card fraud. Police searched the purse of one of the women, Ashley Lee, finding credit cards bearing someone else's name, and they searched the car and found dozens of similar cards in the fuse box. Police also searched the purse of the car's other occupant, Tasheanna Moore, finding another apparently fraudulent credit card. The district court deemed the searches unconstitutional and suppressed the fraudulent-card evidence. We reverse because of a domino effect: the store employee's fraud report gave police reasonable suspicion to stop the car and investigate; the investigation led to probable cause to arrest Lee for credit-card fraud and to search her purse incident to the arrest; the post-arrest search produced evidence establishing the reasonable belief that police would find more evidence of Lee's crime in a vehicle search; the vehicle search produced evidence implicating Moore in Lee's widespread fraud; and this probable cause of Moore's involvement in Lee's fraud supported the officers' decision to arrest Moore and search her purse incident to arrest.

**FACTS**

In May 2014, Roseville police officer Erin Reski was on duty inside the Roseville Walmart when a Walmart security guard urgently approached her. The guard asked the officer to stop two women in the parking lot because they had allegedly just attempted to

use a stolen credit card. Officer Reski located and stopped the women's car in the lot, and she attempted to identify the two occupants. Neither of the women documented a current Minnesota address. The driver, Tasheanna Moore, produced a Georgia driver's license, and the passenger, Ashley Lee, produced a passport. The car was rented in Moore's name.

Officer Reski asked questions about the reported credit-card fraud. Lee presented a credit card bearing her name and said that Walmart had declined the card for lack of funds. The officer was not convinced of Lee's identity because it did not appear to her that Lee's passport photograph resembled her.

Backup officer Michael Holtmeier soon arrived. He went inside the store to learn more about the reported attempted fraud. Officer Reski waited outside with the women.

After about ten minutes, Officer Holtmeier returned outside carrying a photograph, and he relayed to Officer Reski what store employees had told him. According to store employees, a woman had just attempted to purchase items using a credit card that she had swiped on the scanner and put back inside her purse before the cashier could ask to see it. A loss-prevention employee had recognized the woman from an ongoing credit-card fraud investigation and instructed the cashier to ask to see the woman's identification. The woman, Lee, showed the cashier a card identifying herself. Meanwhile, the swiped credit card was declined by the issuer, and when Lee learned of that, she promptly left the store. The loss-prevention officer also gave Officer Holtmeier a photograph of a woman. The image had been captured by a Walmart surveillance camera a few days earlier

immediately after the pictured woman made a purchase fraudulently using a credit card that belonged to someone else.

Officers Reski and Holtmeier concluded that the pictured woman was Lee. They asked Lee to step out of the rental car with her purse. She did. Officer Reski patted Lee down, said she was not under arrest, and questioned her. Officer Holtmeier stood at the passenger side of the rental car, questioning Moore. Lee denied having any stolen credit cards. Officer Reski directed a third officer to search Lee's purse. The officers found two credit cards in Lee's purse bearing the name "Amber Smith." Lee denied that she was Amber, and, despite the cards being found in her purse, she oddly also denied even having Amber Smith's credit cards. After that search, Officer Holtmeier removed Moore and her purse from the rental car.

Officer Reski handcuffed Lee and put her in her squad car, and she questioned Lee further without reading her the *Miranda* rights. Police found another Amber Smith credit card in Moore's purse, and they arrested Moore. Officer Holtmeier searched the interior of the rental car, and in the fuse box found a stack of more than 30 fraudulent credit cards, all also bearing the name "Amber Smith." The officers found a ledger with various Walmart addresses. Police later discovered that each of the different ostensibly "Amber Smith" credit cards contained the financial information associated with one of many different individuals. Investigators believe that these fraudulent cards were fabricated using information stolen in a data breach involving California hotels.

The state charged Lee and Moore with aiding and abetting identity theft. *See* Minn. Stat. §§ 609.05, subd. 1, .527, subds. 2, 3(5) (2014). Lee and Moore moved to

suppress evidence discovered during the searches of the rental vehicle and their purses, as well as all statements they made after their arrests. The district court conducted an omnibus hearing, receiving testimony from the officers and from Moore and viewing a recording from a dash-mounted camera that captured the audio and video of the encounter.

The district court saw discrepancies between some of the police testimony and the discussion captured in the recording. It determined that the officers could not constitutionally justify removing Lee from the car and searching either woman's purse, and it concluded that the arrests and the vehicle search resulted from the illegal purse searches. It reasoned that Officer Reski had reasonable suspicion to stop the car based on the information she received from the Walmart employee, but that she lacked probable cause to detain the car once she determined the occupants' identities. The district court therefore suppressed all evidence collected during the purse and vehicle searches, as well as all statements Lee and Moore made to police after their arrests.

The state appeals in both cases, and we address the appeals together.

## D E C I S I O N

The state appeals from the district court's pretrial order suppressing all physical and verbal evidence collected after Officer Reski identified Lee and Moore. As a preliminary matter, we resolve the reviewability issue. We will review a pretrial suppression order only if the state shows that the order will critically impact its ability to prosecute the case. *State v. Scott*, 584 N.W.2d 412, 416 (Minn. 1998). Lee and Moore

5

rightly concede that the critical-impact requirement has been met here; without the evidence, the state has no case. We turn to the merits.

The state contests the district court's constitutionality decisions about the extended detention and the searches. Both the federal and state constitutions guarantee individuals the right not to be subjected to "unreasonable searches and seizures." U.S. Const. amend. IV; Minn. Const. art. I, § 10. Because the district court's decision calls into question various aspects of the seizure and searches, we will address each aspect separately, applying the varying constitutional reasonableness standard to each.

**I**

We begin with the car stop. The district court held that the stop was valid, and neither Lee nor Moore challenges that holding on appeal. The holding is sound. Police may lawfully detain persons temporarily to investigate if the officer reasonably suspects that the persons were or will be engaged in a crime. *Terry v. Ohio*, 392 U.S. 1, 21, 88 S. Ct. 1868 (1968); *State v. Smith*, 814 N.W.2d 346, 351–52 (Minn. 2012). The district court rightly determined that Officer Reski was constitutionally justified in stopping the car based on the report from Walmart. The officer received a report from a loss-prevention officer that two women of a certain description entering a car of a certain description had just attempted to defraud the store using a false credit card. This first-hand report from a credible source was sufficient to inform any reasonable officer that the identified women may have been involved in a crime. The stop was constitutional.

The district court believed that the reasonableness of police action ended at stopping the car and identifying the occupants. It concluded that Officer Reski had no

6

ground to detain the women further. We reach a different conclusion. An investigatory stop can last as long as needed to satisfy the stop's legitimate purpose. *State v. Wiegand*, 645 N.W.2d 125, 135 (Minn. 2002) (quoting *Florida v. Royer*, 460 U.S. 491, 500, 103 S. Ct. 1319, 1325 (1983) (plurality opinion)). Police may detain suspects while they determine whether a crime has actually occurred, and a reasonable investigation might involve inspecting physical evidence and talking to witnesses. *State v. Pleas*, 329 N.W.2d 329, 333 (Minn. 1983) (quoting *Michigan v. Summers*, 452 U.S. 692, 701 n.12, 101 S. Ct. 2587, 2593 (1981)). The record indicates that Officer Reski sought more details because the Walmart employee's initial crime report was rushed. It also indicates that she sent Officer Holtmeier into the store immediately when he arrived to get more information. She detained the women until Officer Holtmeier returned carrying a photograph and having specific information that the photographed woman had, within the past few days, fraudulently used another person's credit card to make a purchase. The record informs us that only about thirteen minutes passed from the stop to the gathering of all this information. *See State v. Moffatt*, 450 N.W.2d 116, 119 (Minn. 1990) (summarizing that whether the duration of a stop is reasonable "all depends on the facts and circumstances"). Thirteen minutes was a reasonable period for the detention given the nature of the offense and the investigation, and we are satisfied that it violated no constitutional rights.

Lee and Moore urge a different result by emphasizing that Walmart was at that time apparently only interested in learning the identity of the women. And the district court recognized from the audio recording of the officers' on-scene discussions that the

7

officers were seemingly focused also on that identification objective of Walmart. Relying on the district court's fact finding, we do not agree that the officers' interaction with the women must have terminated as soon as they verified their identity. This is because we analyze only to know whether the officers had a legal basis for the detention, and "an arresting officer's state of mind (except for the facts that [she] knows) is irrelevant to the existence of" a legal basis justifying the detention. *Devenpeck v. Alford*, 543 U.S. 146, 153, 125 S. Ct. 588, 593–94 (2004). Our decision about the constitutionality of the officers' actions therefore does not hang on the officers' subjective impressions about their role or about their understanding of their legal limits. Verifying Lee's identity might have supported the officers' desire merely to assist Walmart, but we are not limited to the officers' state of mind. Identifying the women for Walmart could not satisfy the reasonable, objectively determinable *law-enforcement* purpose of the stop. The original law-enforcement purpose was to investigate the credit-card fraud that had reportedly just occurred. Not only was that original purpose not satisfied by merely identifying the women, but as new information presented itself to the officers, the law-enforcement purpose expanded to investigating the previous credit-card fraud of the pictured woman. *See Wiegand*, 645 N.W.2d at 135 (observing that an investigative stop may expand in scope to address additional offenses for which the officer develops reasonable suspicion while investigating the originally suspected offense). We are convinced that the detention to that point did not violate either woman's constitutional rights. We hold that the district court erred by deeming the detention unlawful. This takes us to Lee's more restrictive consequent detention.

## II

The state argues that Reski lawfully arrested Lee. To make a valid warrantless arrest, police must have probable cause to believe that the suspect "had committed or was committing an offense." *Beck v. Ohio*, 379 U.S. 89, 91, 85 S. Ct. 223, 225 (1964). An officer has probable cause to arrest if she knows of objective facts or circumstances that would "lead a person of ordinary care and prudence to entertain an honest and strong suspicion that the [suspected] person . . . is guilty of a crime." *State v. Carlson*, 267 N.W.2d 170, 173 (Minn. 1978); *see also Maryland v. Pringle*, 540 U.S. 366, 371, 124 S. Ct. 795, 800 (2003) ("[T]he substance of all the definitions of probable cause is a reasonable ground for belief of guilt." (quotation omitted)); Minn. Stat. § 629.34, subd. 1(a), (c)(3), (5) (2014) (permitting warrantless arrest on probable cause for gross misdemeanor violations of the statute prohibiting credit-card fraud). We evaluate probable cause by examining the totality of the circumstances. *State v. Burbach*, 706 N.W.2d 484, 488 (Minn. 2005). We therefore consider what circumstances were known to the officers before they asked Lee to step out of the car and put her in handcuffs.

The parties do not agree about all the facts. Although we will rely only on the district court's findings that are not infected with clear error, *State v. Milton*, 821 N.W.2d 789, 798 (Minn. 2012), and the parties assert that various findings are clearly erroneous, we do not deem the fact disputes material. The undisputed facts demonstrate that the officers had probable cause to arrest Lee for credit-card fraud.

Before arresting Lee, Officer Reski had gathered key facts that might help inform a reasonable officer about whether Lee had committed a crime. She learned that Moore

9

and Lee, who gave no proof of a local address, had driven to Walmart in a rented car. She learned that Lee had just attempted to purchase items with a credit card, swiping it herself and returning it to her purse before the cashier asked to see identification. Lee left the store promptly when the credit card was declined by the issuer. In our view, Lee and Moore are correct that these facts, without more, do not establish probable cause that Lee had just attempted credit-card fraud. But the evolving investigation by then also included the information that a woman had in fact engaged in credit-card fraud at the store within the previous several days, that the store had captured an image of the offending woman on a surveillance photograph, and that Lee appeared to be the pictured offender. As the district court accurately summarized it, Officer Holtmeier had then gained "information implicating Lee in another credit card fraud incident at the same store a few days earlier." The audio recording of the officers' dialogue readily supports that finding:

| | |
|---|---|
| Holtmeier: | They- this is in this Walmart the other day. |
| Reski: | And that's her, yeah. |
| Holtmeier: | And she was using a fraudulent credit card from Big Lake. |

Lee and Moore argue that the photograph did not prove fraud, in part because it was taken at the store entrance and does not show Lee making the allegedly fraudulent transaction. But the photograph is only part of the picture; Walmart employees expressly identified the person in the photograph as the woman who transacted fraudulently, and that person, according to the arresting officers' own observation, is Lee. The women also contend that one could not be certain that the alleged prior fraud actually occurred because it was then still under store investigation. But this contention places the

probable-cause bar too high. To constitute probable cause, the circumstances "must justify more than mere suspicion but less than a conviction." *Carlson*, 267 N.W.2d at 174. The record establishes that Walmart's onsite loss-prevention employee believed a credit-card fraud had already occurred and that the only uncertain matter under investigation was the identity of the photographed suspect.

Given these undisputed or supported circumstances, we need not address the remaining fact disputes; we are satisfied that these circumstances would lead a reasonable person to a strong suspicion that Lee committed either credit-card fraud or identity theft, or both. *See* Minn. Stat. §§ 609.821, subd. 2(1), (2) (defining financial transaction card fraud as using or attempting to use a card to obtain property with knowledge that the cardholder has not consented to the use or as using or attempting to use a card knowing it to be forged, false, fictitious, or obtained through certain acts of fraud), .527, subd. 2 (defining identity theft as transferring, possessing, or using an identity that is not one's own with the intent to commit, aid, or abet any unlawful activity) (2014). Because the officers had probable cause to believe that Lee had committed a crime, her detention at that point was constitutionally justified whether or not the officers intended to actually place her under arrest.

**III**

The state challenges the district court's conclusion that the warrantless purse search was unreasonable and violated Lee's constitutional rights. We have already explained that unreasonable searches are unconstitutional. Warrantless searches are per se unreasonable unless they fall within an established exception to the warrant requirement.

*Arizona v. Gant*, 556 U.S. 332, 338, 129 S. Ct. 1710, 1716 (2009). A search incident to a lawful arrest is one of these exceptions. *Id.*

The state argues that police lawfully searched Lee's purse incident to her arrest. If police have probable cause to arrest, they can then conduct a full warrantless search of the person incident to the arrest. *United States v. Robinson*, 414 U.S. 218, 235, 94 S. Ct. 467, 477 (1973). And the post-arrest search can extend to containers possessed by the arrestee. *Matter of Welfare of G.M.*, 560 N.W.2d 687, 695 (Minn. 1997). (citing *Robinson*, 414 U.S. at 236, 94 S. Ct. at 477). Lee was formally arrested within two minutes after the search began, her purse was on her person, and probable cause for her arrest existed independent of the additional evidence officers found in the purse. That the officers searched Lee's purse before they put her in handcuffs and before they officially arrested her is not significant because a lawful search incident to arrest may occur before or after the arrest. *State v. White*, 489 N.W.2d 792, 794 (Minn. 1992) ("[T]hat this novice officer had not formally placed defendant under arrest but was continuing . . . on a *Terry* stop rationale does not foreclose the state from . . . justifying the search as an incidental search."); *see also Rawlings v. Kentucky*, 448 U.S. 98, 111, 100 S. Ct. 2556, 2564 (1980) ("Where the formal arrest followed quickly on the heels of the challenged search of petitioner's person, we do not believe it particularly important that the search preceded the arrest rather than vice versa."). We hold that the purse search was lawful. The district court erred by deciding that the warrantless search of Lee's purse violated her constitutional rights.

**IV**

The state contends that police lawfully searched the rental car, relying on both the automobile exception to the warrant requirement and the validity of searches incident to arrest. We are satisfied that the car search was valid incident to Lee's arrest, so we address only that basis.

Police may search a car incident to an occupant's arrest, but the Supreme Court's test for the validity of this kind of search is a bit imprecise. On one hand, it explained that the search is valid if, among other grounds, "it is reasonable to believe the vehicle contains evidence of the offense of arrest." *Gant*, 556 U.S. at 351, 129 S. Ct. at 1723. But on the other hand, the *Gant* Court also described the standard with less rigor than this, saying, "[C]ircumstances unique to the vehicle context justify a search incident to a lawful arrest when it is reasonable to believe evidence relevant to the crime of arrest *might* be found in the vehicle." *Id.* at 343, 129 S. Ct. at 1719 (emphasis added) (quotation omitted). Some courts following *Gant* have included its seemingly lenient "might" reference. *See Johnson v. Phillips*, 664 F.3d 232, 238 (8th Cir. 2011) (including the word "might" in the test); *United States v. Williams*, 616 F.3d 760, 764 (8th Cir. 2010) (same); *United States v. Winters*, 600 F.3d 963, 968 (8th Cir. 2010) (same). The Supreme Court itself later articulated the vehicle-search-incident-to-arrest standard without using the word "might." *See Davis v. United States*, 131 S. Ct. 2419, 2425 (2011). We do not attempt to find the contours of the standard here for two reasons. First, we are certain that the standard is less exacting than the lenient probable-cause standard. *See Megginson v. United States*, 556 U.S. 1230, 129 S. Ct. 1982 (2009) (Alito, J., dissenting)

13

(characterizing the *Gant* standard as a reasonable suspicion requirement). And we are convinced that police were justified in searching the rental car incident to Lee's arrest under the *Gant* standard.

Several facts support our view. The officers knew that Lee engaged in a credit-card fraud that had occurred several days earlier. Their search of Lee's purse produced two different credit cards bearing someone else's name, suggesting a potentially broader crime. This information, especially when augmented with new circumstances, would sufficiently inform the officer that the car might possess additional evidence. Those new relevant circumstances include the facts that Lee arrived at the victim store in a rented car, apparently had no local identification, and had just tried to make another purchase on a declined card. These circumstances taken together would inform a reasonable officer that Lee is involved in a general fraud scheme and that the car might contain additional credit cards issued to other victims or receipts from other fraudulent purchases. We hold that the officers had sufficient information to search the rental car for evidence of credit-card fraud incident to Lee's arrest. This takes us to the question of Moore's arrest.

## V

The state argues that the officers had probable cause to arrest Moore after they searched the rental car. The argument is well founded. Again, we ask only whether the officers knew of circumstances that would cause a reasonable person to strongly suspect the person of committing a crime. *Beck*, 379 U.S. at 91, 85 S. Ct. at 225. Adding to the circumstances already justifying both Lee's arrest and the searches of Lee's purse and the rental car, police found more than 30 fraudulent credit cards inside the car and a ledger

14

with multiple Walmart addresses. And they found the cards in the fuse box rather than in a place that might suggest the cards were exclusively possessed by Lee, who had been a passenger in the car. Not only was Moore the one who rented and drove the car, the video recording indicates that Officer Holtmeier accessed the fuse box from the driver's seat, which is where Moore had been sitting. The evidence taken together indicates a broad identity-theft scheme and credit-card fraud. And Moore's relationship to the car and her proximity to the incriminating evidence found inside would cause a reasonable person to strongly suspect her of committing the crime of identity theft and credit-card fraud directly or as driver for and an accomplice to Lee. *See Pringle*, 540 U.S. at 372–73, 124 S. Ct. at 800–01 (holding that officer could infer a common enterprise among a car's occupants and had probable cause to arrest those who exercised control over the drugs); *see also* Minn. Stat. § 609.05, subd. 1 (imposing criminal liability for aiding another or conspiring to a commit a crime).

We again recognize the timing inconsistencies between the circumstances and our reasoning. The recording shows that police did not find the fuse-box contraband until three minutes *after* they arrested Moore. But we have already explained that the vehicle search was not unlawful, and it did not result from Moore's arrest. Even if the first three minutes of Moore's arrest was not supported by probable cause, the seizure became lawful after officers found the evidence. *See State v. Olson*, 634 N.W.2d 224, 230 (Minn. App. 2001) (holding that, even though the arresting officer did not have probable cause for the initial arrest, the arrestee's subsequent obstruction of process "purge[d] the taint of the initial illegality"), *review denied* (Minn. Dec. 11, 2001). The evidence discovered

15

would have resulted in her arrest regardless of the timing. Because Moore's arrest was valid, the only remaining question is whether the search of her purse was also valid.

VI

Having decided that police had probable cause to arrest Moore, we have no difficulty holding that they also did not violate Moore's constitutional rights by searching her purse. The state argues that officers lawfully searched Moore's purse under the automobile exception to the warrant requirement. But the parties dispute when and where Officer Holtmeier searched Moore's purse, and the district court made no finding on the matter. The squad car recording shows that officers found a fraudulent credit card in Moore's purse after they arrested Lee and found fraudulent cards in Lee's purse but before they found the stack of fraudulent credit cards in the fuse box. Again the timing is not critical for the reasons already discussed, and the search was valid as a search incident to arrest. Once police found the evidence in the fuse box near Moore's seat, they had probable cause to arrest her and to search her purse incident to that arrest. The district court should not have suppressed the evidence found in Moore's purse.

**Reversed.**